## STOUT, Respondent, v. CARUTHERSVILLE HARD-WARE COMPANY, Appellant.

### St. Louis Court of Appeals, May 12, 1908.

1. **SALES: Principal and Agent: Undisclosed Principal.** Where a man employed an agent to purchase certain chattels for him and caused them to be charged to a third person who was indebted to the purchaser, and where the seller knew of the arrangement and knew who was the real purchaser, he could not defend an action, brought by the purchaser and based on the contract of sale, on the ground that the goods were sold to the party to whom they were charged.

2. **PRACTICE: Variance.** Where a petition alleged, as a basis of the plaintiff's cause of action, that the defendant promised and agreed to sell certain goods to the plaintiff at as low prices as they could be bought for, from a certain dealer in Memphis, or any other dealer in such goods in said city or any other market, and the evidence showed that the agreement was to furnish the goods as cheaply as they could be bought "anywhere," not mentioning any dealer or place, this was a variance and not a failure of proof.

3. **SALES: Contract of Sale: Certainty of Terms.** A contract of sale must be certain in its terms; it is essential among other things for the price to be named, or for some method of ascertaining it to be indicated. An agreement to sell goods at the lowest price at which they could be bought anywhere, is too indefinite, as to the price to be paid, to be enforced as a contract.

4. ———: ———: ———: **Executed Contract.** But where such a contract was executed by delivery of the articles sold, the law will treat the transaction as a sale for the reasonable value of the goods.

5. ———: ———: **Fraud.** Where a party was induced to purchase goods on the agreement and representation of the seller that the goods would be charged to him at no higher price than they could be bought for elsewhere, and paid for the goods believing he was paying only such price when in fact the price was grossly extortionate, if the purpose of the seller was to defraud the plaintiff and induce him to pay the higher price, an action would lie by the purchaser against the seller on account of such fraud.

6. ————: ————: ————: **Promissory Statements.** Such statements made by the seller are not merely statements of future intentions, but the transaction amounts to a promise, made with the purpose of breaking it, and it is actionable.

7. **PRACTICE: Fraud and Deceit: Assumpsit.** Where one was induced to purchase goods by fraudulent representations as to the price which was to be paid and thereby induced to pay more than their value, he could waive the fraud and recover the difference between the reasonable value and the price paid, in an action on *indebitatus assumpsit.*

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

*Faris & Oliver* for appellant.

(1) Giving to plaintiff the benefit of his pleading that the goods were by him bought, the goods delivered, and by plaintiff paid for, he yet fails to show any legal reason entitling him to recover a part of the payment made to defendant. His sole allegation for recovery is that defendant made certain false representations as to the cost and price of the goods sold plaintiff. This is not sufficient. For statements made as to prices paid for an article, or offers made for it, do not amount to fraud and deceit, and will not warrant recovery for payment made. Mackenzie v. Seeberger, 108 Fed. 108; Dillman v. Nadlehoffer, 119 Ill. 567; Hemmer v. Cooper, 8 Allen (Mass.) 334; Manning v. Albee, 11 Allen (Mass.) 522; Baum v. Davis, 76 Me. 223. (2) If plaintiff seeks to recover upon the grounds that he relied upon the statements and representations of the defendant as to price of the hardware in question, and by such representations was induced to pay an excessive amount, under a mistaken idea as to their price, he has yet proven no cause of action. For it is the law that where the payor had, at the time of the payment, ample means at hand to obtain full and accurate infor-

mation in regard to the facts, payment cannot be recovered, for his ignorance of the facts is due to his own negligence.   Simmons v. Looney, 41 W. Va. 738; Stevens v. Head, 9 Vt. 174.

*Ward & Collins* for respondent.

(1)   The demurrer in this case was properly overruled.   The respondent in his petition declared upon a contract, alleges a breach thereof, and his damages resulting therefrom.   All of which allegations are abundantly supported by the evidence. 14 Am. and Eng. Ency. of Law, p. 129; Rutledge v. Tarr, 95 Mo. App. 265.   (2) Appellant can not ask respondent to believe its representations and then condemn respondent for believing them.   Having caused respondent to act by its representations it is estopped to take advantage of a condition it fraudulently brought about.   Union Savings Assn. v. Kehlor, 7 Mo. App. 163; Chouteau v. Goddin, 39 Mo. 229. Kansas City ex rel. v. Ratekin, 30 Mo. App. 428; Midland Lbr. Co. v. Kreeger, 52 Mo. App. 421; Snodgrass v. Emery, 66 Mo. App. 467.   But regardless of the proposition of deceit and fraud, before appellant can escape liability on its contention that the money was paid without protest, it must go further and show that the respondent was advised of all the facts at the time he made such payment, or at least acted in ignorance of facts which he had means of knowing.   Wolf v. Marshall, 52 Mo. 167; Claflin v. McDonough, 33 Mo. 415; Schell City v. Mfg. Co., 39 Mo. 269; Campbell v. Clark, 44 Mo. App. 252.

GOODE, J.—In the year 1904 this plaintiff was engaged at Pascola in Pemiscot county, in loading logs for a sawmill known as the Lewis mill.   He needed in the work, which was done in the main by derricks, a good deal of wire rope, steel blocks and wire rope clamps.   Having occasion to purchase such articles he arranged with John Powell to go to Memphis and buy

them, preferably, unless better prices could be obtained from some other dealer, from a firm there of hardware dealers styled F. C. Atkins & Co. Powell lived in Caruthersville, about twelve miles from Pascola, and was in the employ of John Spangler, who had a stave factory at Caruthersville. Plaintiff furnished his own machinery and appliances, but he, too, was working for Spangler, and the latter was indebted to him; a circumstance which will be seen to cut a figure in the case. After Powell had been commissioned to buy the goods in Memphis, he first went from Pascola to his home in Caruthersville, intending to stay over night there and go on next day to Memphis. Charles Dorroh, manager of defendant company, which did business in the city of Caruthersville, learned of Powell's errand and, as Dorroh expressed it, "went after the order" for defendant. In an interview with Powell, Dorroh represented and agreed if the order was given to defendant, the goods would be furnished for as low prices as they could be bought for any where else. With this understanding and without any prices being named, Powell gave Dorroh the order and the goods were shipped by defendant to plaintiff at Pascola and charged on defendant's books to Spangler, pursuant to Powell's direction. They were so charged because, as Spangler was indebted to plaintiff, the former was to pay for the goods and deduct the amount from the indebtedness. This was done and plaintiff reimbursed Spangler the amount of the bill which was $316.72. Some time afterward plaintiff learned defendant, instead of charging the current prices of the goods in Memphis and which F. C. Atkins & Co. would have sold them for, had charged and collected excessive prices. He laid the matter before Dorroh, demanding repayment of the excess, and, according to his statement, Dorroh promised from time to time to repay him but never did. Finally this action was brought for the excess, which was laid in the peti-

tion at $151.94. The jury returned a verdict in plaintiff's favor for $98 and from a judgment for said sum defendant took this appeal. The petition says defendant promised and agreed to sell and deliver the articles of hardware to plaintiff "for the sum and prices plaintiff at said time could purchase the same of F. C. Atkins & Co. of the city of Memphis, Tennessee, or any other dealer in such goods in said city or in any other market;" and that defendant represented to plaintiff the amount of the bill ($316.72) was the price and sum charged at the time by F. C. Atkins & Co., of Memphis, Tennessee, and other dealers in said city or any other market for said goods; or for the same amount and quantity of goods of the same kind and quality, and plaintiff, relying on said false and fraudulent representations and believing them to be true, paid defendant the sum so charged. It is further averred the prices charged by F. C. Atkins & Co. and other dealers in the city of Memphis, or any other market, for the same kind and quantity of goods, was not the sum of $316.72 charged by defendant, but $189.76; that when plaintiff paid for the goods he did not know the prices for which he could have purchased said goods from F. C. Atkins & Co. or other dealers in the city of Memphis, or any other market, and as soon as he became aware he had paid defendant more than the contract required him to pay, he demanded of defendant the amount overpaid, but defendant refused to repay it. Defendant denied the allegations of the petition. The court instructed the jury, if they believed the articles of hardware purchased from defendant were bought by Spangler for plaintiff, and paid for by Spangler for plaintiff before the institution of the suit, and further believed the prices charged for the articles were in excess of the prices at which defendant agreed to sell them, the finding should be for plaintiff for the amount of the excess charged.

One error assigned and much insisted on, is allowing plaintiff to recover when the entire evidence showed the goods were sold to Spangler instead of plaintiff, and hence there was no privity of contract between the parties litigant. This point would be well taken if the evidence was as defendant contends; but it was not. Much of the testimony went to show Dorroh knew when he took the order, the goods were bought by Powell for plaintiff and were to be charged to Spangler to be paid for by him in the first instance, and the payment settled between him and the plaintiff in adjusting their accounts. Dorroh testified he knew nothing of plaintiff's interest in the transaction, but he was contradicted by other witnesses. Beyond doubt the principal in the transaction was plaintiff, and Spangler had nothing to do with it except to pay the bill and look to plaintiff for repayment.

It is contended plaintiff, allowing him the benefit of all he alleged and proved, showed no ground of recovery, and this position requires careful attention. The petition alleges defendant promised and agreed to sell the goods at as low prices as they could be bought for from F. C. Atkins & Co. of Memphis, or any other dealer in such goods in said city, or any other market. The evidence varied from this averment, as both Powell, who made the contract with Dorroh, and Dorroh himself, swore the latter agreed to furnish the goods as cheaply as they could be bought anywhere not mentioning F. C. Atkins & Co. or other dealers in Memphis. We regard this as a variance instead of a failure of proof, because the agreement to sell as cheaply as the goods could be bought "in any other market," stated in the petition, is equivalent to the agreement proved to sell as cheaply as they could be bought anywhere. But the arrangement proved was not a sale, because an essential element of a sale is a money price, either fixed by an agreement between the buyer and seller, or capable of

being ascertained from their agreement. A sale agree-ment, like any other, to amount to a contract, must be certain in its terms, or furnish means to affix certainty to its terms. [Benjamin, Sales (7 Ed.), pp. 1, 2; 1 Paige, Contracts, sec. 27.] In the sale of a chattel, it is not essential for the price to be named, but when not named, some method of ascertaining it must be in-dicated by the parties. [2 Paige, Contracts, sec. 788; Tiedeman, Sales, sec. 45; Benjamin, Sales, 144; Cun-ningham v. Brown, 44 Wis. 72.] The agreement about the price in the present case, was too indefinite for the arrangement to be enforced in equity as a contract, or for the law to take cognizance of it as such. The stip-ulation that the goods should be sold as cheaply as they could be bought for elsewhere, neither fixed the prices nor furnished a practicable means of fixing them. Likely the prices of such articles as were sold fluctuate from time to time and are, in some measure, different in different markets and perhaps among the various deal-ers in the same market. What were the lowest prices at which they could be bought "anywhere," even if we circumscribe the meaning of "anywhere," so as to in-clude only markets which might be deemed accessible to plaintiff or his agent Powell, is an inquiry a court will not enter on because it can not be answered with certainty on a reasonable investigation. In Gelston v. Sigmund, 27 Md. 334, it was held a court of equity would not enforce an agreement to lease premises for a rental stipulated to be "as much as any one else would pay." The court said the rent could not be certainly ascertained, as it was not practicable to know how much another would give. A like proposition was de-termined in Bromley v. Jeffries, 2 Vernon 415, where the court refused to decree performance of a settlement on trustees of a manor by which settlement the plaintiff was to have the manor for fifteen hundred pounds less than any other purchaser would give for it. Those

cases were in equity and we have found none at law wherein the exact point was determined, but have no doubt the same view would be taken by a court of law.

Though this agreement would have been treated as invalid as long as it remained executory, it was executed by the parties and the case must be disposed of with reference to this fact. When a sale transaction which is incomplete as a contract in consequence of the price being left uncertain, is carried into execution by delivery of the article sold, the law treats the transaction as a sale for the reasonable value of the article, and this value can be recovered. [1 Tiedeman, Sales, sec. 47; Deck's Admr. v. Feld, 38 Mo. App. 674; Benjamin, Sales, 146.] It follows defendant would have been entitled to collect the reasonable value of the merchandise sold to plaintiff after it had been delivered and appropriated; and this, no doubt, was what plaintiff and his agent understood Dorroh's agreement to mean; not that, according to its literal import, plaintiff might claim a deduction from the prices charged, if, perchance, he learned some dealer somewhere would have made lower prices. But plaintiff paid for the goods and says he was induced by fraud to pay much more than the agreed price, which, in view of the vagueness of the stipulation, must be considered the reasonable worth of the different articles. On such facts, proof of deceit and fraud whereby plaintiff was damaged, would lay defendant liable in an action of tort; and the fraud might be worked by conduct as well as by words. [1 Bigelow, Fraud, 467; 14 Am. and Eng. Ency. Law (2 Ed.), 30; 20 Cyc. 15; Leonard v. Springer, 197 Ill. 532.] The testimony for plaintiff inclines to prove Dorroh induced Powell to rely on the former's observing, in good faith, the promise to charge no higher prices than the goods could be bought for elsewhere, and that plaintiff, in settling with Spangler, paid defend-

ant's bill believing he had been dealt with honestly, when in truth he had been the victim of extortion. If certain testimony is true, the overcharges were so large as to raise a question regarding the bona fides of Dorroh's promise and subsequent conduct in fixing the prices. He may have intended, when he agreed with Powell, to overcharge; or have conceived the intention afterwards. This is immaterial; for in either contingency, if his purpose was to defraud plaintiff and induce him to pay an extortionate sum by deceiving him concerning the justness of the prices, an action lies. In a sense Dorroh's promise related to the future; what he would charge. But, properly viewed, the case does not fall under the rule that statements of future intentions, if they turn out to be untrue, afford no ground for an action of deceit; but rather under the rule that such a statement or promise, if made with the purpose of breaking it, is actionable. [Culbertson v. Young, 86 Mo. App. 277; 14 Am. and Eng. Ency. Law (2 Ed.), 51.] It is said Dorroh's statement or promise will not support a case, because it referred to prices or values. A misrepresentation, not amounting to a warranty of the value of the thing sold is not, generally speaking, actionable; but this case involves another principle of law. Dorroh's promise was an essential element of the transaction, instead of mere "dealers' talk." It persuaded plaintiff's agent to order from defendant the goods the agent was commissioned to buy and entrust the fixing of prices to Dorroh's integrity. There is evidence to prove the confidence thus reposed was taken advantage of in a fraudulent way to obtain money to which defendant had no right. Surely the law will redress such a wrong, as many of the cases cited supra and infra, show. [20 Cyc., pp. 50, 51; Cottrill v. Krum, 100 Mo. 397, 13 S. W. 753; Kilgore v. Bruce, 166 Mass. 136; Leicher v. Keeny, 98. Mo. App. 394, 72 S. W. 145.]

But though plaintiff charges defendant with fraud,

the case stated is not in tort for deceit, but in assumpsit for money had and received. The statements of fraud do not constitute the gravamen of the petition, but are made as matter of inducement; and this is often so in such actions, and rightly so when the facts are tortious out of which it is sought to imply a promise to pay. [Pomeroy, Code Rem. (4 Ed.), 589, 645, 646, 654; Bliss, Code Pldg. (3 Ed.), sec. 155.] The action was treated as one for money had and received in the main instruction granted at plaintiff's instance, which declared if the jury found the prices charged for the goods were in excess of the prices for which they were agreed to be sold, the finding should be for the amount of the excess. We must decide whether the excessive sum paid above the reasonable prices, and obtained as the fruit of fraud if plaintiff's testimony is true, may be recovered as money had and received. In other words, can plaintiff waive the tort and sue on an *indebitatus assumpsit?* At first we were in much doubt about the propriety of this procedure, but an examination of the authorities has led us to conclude it is correct. The remedy for money had and received is a good deal like a bill in equity, is governed by equity principles, and, subject to certain exceptions, lies whenever one person has received money belonging to another which in justice and right should be returned. [2 Paige, Contracts, 1203; Gaines v. Miller, 111 U. S. 395; Moffit-West Drug Co. v. Richardson, 92 Mo. App. 515; Moses v. McFerlane, 2 Burr. 1005.] A fact essential to the remedy is that the person who received the money is not entitled, in good conscience, to retain it; a condition satisfied in the present instance, according to the testimony for plaintiff, which shows he was led into paying too much by the fraudulent conduct of defendant. Such being true, the case falls within the precedents which permit a party who has been induced by fraud to pay money, to sue in as-

131 App.—34

sumpsit on the common counts for money had and received. This doctrine is elucidated and a large number of cases cited in 2 Paige, Contracts, secs. 616, 617. We refer to said cases and also to the following: Bliss v. Thompson, 4 Mass. 488; Norden v. Jones, 33 Wis. 600; Johnson v. Seymour, 79 Mich. 156; Barnard v. Colwell, 39 Mich. 215; Holtz v. Schmidt, 59 N. Y. 253; Lockwood v. Kelsea, 41 N. H. 185; D'Utricht v. Melchor, 1 Dall. (U. S.) 151; James v. Hodsden, 47 Vt. 127; Byard v. Holmes, 33 N. J. L. 120; Bridge v. Penniman, 12 N. E. (N. Y.) 19; Warner v. Cammack, 37 Iowa 642; Stanhope v. Swafford, 77 Iowa 594; Fisher v. During, 53 Mo. App. 549. The principle of all those decisions supports the proposition that the present form of action will lie on the facts before us, but perhaps none of them are more in point than Stanhope v. Swafford, Holtz v. Schmidt, and Barnard v. Colwell. In the first of the cases just cited, it appeared the defendants had sold the plaintiff three hundred and twenty acres of land for $2,240, the plaintiff never having seen the land and having been induced to buy by the representation of the defendants that it was worth the price asked, which representation was false and fraudulent, as the defendants knew the land was not worth more than $640. The action was for the difference, to-wit: $1,600, and the plaintiff obtained judgment. It was held the excess of price procured by the fraud was a debt within the meaning of the statute of Iowa, permitting an attachment for a debt due for property obtained under false pretenses; and the court said the plaintiff could waive the tort and sue on the promise the law implied against the defendants to pay plaintiff's loss. In Holtz v. Schmidt, the defendants had agreed if the plaintiff would purchase the goods from them he required in his business, they would make as low prices to him as to any one else; and on this understanding he purchased the goods at different times, and the de-

fendants charged him more than they were charging others. It was held the plaintiff could sue in assumpsit for money had and received for the difference between the prices charged him and those charged other persons. So in Barnard v. Colwell, it was held assumpsit would lie for money had and received for the plaintiff's use, on proof he had been fraudulently induced to overpay for property which the defendant had agreed to sell him at cost.

As there is no dispute between the witnesses touching the terms of the agreement entered into by Powers and Dorroh, and as this agreement was, in legal effect, to furnish the goods at their reasonable value, the instructions should be framed so as to allow a recovery of the amount, if any, paid by plaintiff above the reasonable value at the time and place of sale. If any evidence is adduced to show plaintiff paid for them after he had learned the prices charged were unreasonable, this evidence should be submitted as tending to establish a defense. It would be better to amend the petition so it might more clearly appear whether plaintiff is suing in contract or in tort.

The judgment is reversed and the cause remanded. All concur.