**O. L. BURGER, Appellant,**

v.

**CITY OF SPRINGFIELD, Missouri, a municipal corporation, Respondent.**

No. 47020.

Supreme Court of Missouri,

Division No. 1.

April 13, 1959.

Motion to Modify Judgment Denied May 11, 1959.

Horace S. Haseltine, Harold T. Lincoln, Lincoln, Lincoln, Haseltine, Forehand & Springer, Springfield, Sam R. Gardner, Gardner & Gardner, Monett, for appellant.

John B. Newberry, Springfield, for respondent.

DALTON, Judge.

This is an action by which plaintiff seeks to recover $100,000 for personal services rendered the City of Springfield as a negotiator in the purchase of the property of the Springfield City Water Company, a public utility. The amended petition contains two counts in which different theories of recovery are set forth, as hereinafter stated. The trial court sustained a motion to dismiss both counts and plaintiff appealed.

The facts alleged as a basis for the plaintiff's claim are substantially as follows: On June 25, 1956, the City Council of the City of Springfield, Missouri, duly passed and the Mayor signed a resolution entitled: "A Resolution—To authorize the Water Works Committee of the Council to employ a representative of the city to conduct negotiations for the purchase of the Water Works." The resolution provided: "Whereas, it is desirable that the City of Springfield, Missouri, be represented by a suitable person in negotiating the proposed purchase of the Water works; Now Therefore, Be It Resolved by The Council of the City of Springfield, Missouri as follows:

"That the Water Works Committee of the Council be and it is hereby authorized to employ a suitable person to represent the City in such negotiations and *a reasonable compensation for services and expenses to be fixed by the Council upon the completion of his services."* (Italics ours.)

Thereafter, on the 26th day of June, 1956, the then-Mayor of the City of Springfield, Missouri, Warren M. Turner, whom the plaintiff alleged to be a member of the Joint Water Works Committee and acting as spokesman therefor, wrote to plaintiff at his place of business in Dallas, Texas, two letters, both of which informed plaintiff that he had been selected to represent the City in its negotiations with the Springfield City Water Company, a private water utility, for the purchase of the utility's property. A copy of the City Council's resolution was enclosed. In one letter it was stated: "The Water Works Committee of the Springfield City Council has, in accordance with the authority granted in a resolution adopted last night (a copy of which is enclosed), unanimously appointed you to represent the City in negotiations with the Springfield City Water Company for the purchase of the water works by the City." In the other

letter the then-Mayor stated, "It is our understanding that the City will expect to pay you fair compensation for your services in the matter, the compensation to be agreed upon between you and the City Council when the matter is completed. If this is not your understanding of the agreement, please let me know at once. This is the understanding Mr. Wann had after his second conversation with you; that you could not fix a fee in advance, but that you would rely on the fairness of the Council in agreeing upon a fair and reasonable fee." The letter closed with this statement: "I am enclosing a formal notification of your appointment, also, a copy of the resolution."

On June 28, 1956, plaintiff replied by letter, in part, as follows: "I wish to acknowledge your letter of June 26 stating that the Water Works Committee of the Springfield City Council had appointed me to represent the City of Springfield in negotiations with the Springfield City Water Company for the purchase of the water works by the city. I hereby advise you of my acceptance as negotiator on the basis and terms as set out in your letter of June 26 * * *."

Thereafter, the plaintiff entered into negotiations with the Springfield City Water Company regarding the possible purchase of the utility by the City of Springfield, Missouri. On December 30, 1957, the entire properties of the private utility were purchased by the City. Demand was thereafter made by plaintiff that he be paid for services rendered in the purchase negotiations. Payment was refused on the ground that defendant City could not legally make such payment.

Concerning the value of plaintiff's services, the amended petition alleged that defendant had started negotiations for the purchase of the water works from the Springfield City Water Company in 1953 and, after three years of fruitless negotiations, the City passed the resolution under which plaintiff was employed; that plain-

tiff, after having accepted the employment according to the terms of the mentioned resolution, proceeded to negotiate for the defendant City over a period of some seven months; that at the time of plaintiff's employment, the water company was asking $23,900,000 for the plant; that by October, 1957, the asking price was $20,000,000; that plaintiff was authorized to pay $19,500,000, but finally negotiated the purchase for $19,000,000; that, thereafter, the City voted bonds for the purchase, sold the bonds and did purchase the water plant under the contract negotiated by the plaintiff; and that a fund from the bond money was earmarked for the payment of plaintiff, but no payment was made.

The first petition was in one count, but after a motion to dismiss was sustained, plaintiff filed an amended petition in two counts. It is apparent that the first count of the amended petition is based upon the theory of a written contract between plaintiff and defendant which had been fully complied with by plaintiff, but breached by defendant by its refusal to pay plaintiff any compensation for his services. By this count plaintiff seeks to recover $100,000, which is alleged to be a fair and reasonable compensation for his services as agreed upon in the contract.

In the second count plaintiff alleged facts which he now claims justify recovery of $100,000 for the mentioned services on either of two different theories, to wit: (1) that "defendant was under a legally imposed duty to provide for a water supply for its inhabitants; and, since plaintiff was employed by defendant to assist defendant in performing this duty, defendant has a legal obligation to pay for the reasonable value of plaintiff's services"; and (2) that "since plaintiff was employed by a legally enacted resolution of defendant, there is a legal obligation on defendant to pay plaintiff the reasonable value of his services by reason of the Resolution." Appellant says that "a valid contract has nothing whatsoever to do with plaintiff's recovery under either of these theories."

The motion to dismiss the two counts of the amended petition was based upon the theory that neither count stated facts upon which relief could be granted, because of the provisions of Section 432.070 RSMo 1949, V.A.M.S. As to the first count, the motion to dismiss stated: "* * * the facts set out in Count I of plaintiff's amended petition clearly shows that the consideration to be paid by defendant under the terms of the alleged contract was not set out; that the failure to set out the consideration to be paid plaintiff makes the alleged contract void ab initio; and that Section 432.070, supra, prohibits the defendant from paying plaintiff any amount under the facts plead and relied upon by plaintiff." As to the second count, the motion stated: "* * * Count II of plaintiff's amended petition does not allege any contract in writing with the plaintiff; and * * * Count II of plaintiff's amended petition may be construed as relying on the allegations contained in Count I of plaintiff's amended petition; and the reason set out for Count I of plaintiff's amended petition likewise apply to Count II of plaintiff's amended petition."

Respondent's position on this appeal is well stated in its brief, as follows: "It is the position of the respondent, insofar as Count I of appellant's petition is concerned, that if it be conceded that the resolution of the City Council and the letters written pursuant thereto, constitute a contract in writing, dated when made, and subscribed by the parties thereto, that said agreement must fail, and that it is void and unenforceable, because it fails to set out the consideration to be paid to appellant for rendering the services contemplated by the contract. * * * clearly the facts, as set out in appellant's petition, which must be taken as true on the motion to dismiss, show that this transaction contravenes the direct mandatory requirements of Section 432.070. It left the amount to be paid to appellant undecided until the appellant had performed his services." Respondent further says that "the alleged contract by the appellant and

respondent in this case violates the statutory requirement and is, therefore, ultra vires, void and unenforceable" ; that "the City of Springfield, Missouri, adopted the only legal position possible as a municipality in its refusal to pay appellant * * * for the services rendered in the purchase of the Springfield City Water Company" ; and that it is "impossible for respondent city, itself a subdivision of the government and a creature of the law, to recognize moral obligations in the face of positive statutory declarations."

As to Count II, respondent says the facts in the instant case fail to bring appellant's claim within any factual situation not covered by Section 432.070. Respondent further insists that on the facts here, Section 432.070 RSMo 1949, V.A.M.S., is a complete bar to recovery on either count of the amended petition. In view of the conclusion we have reached we consider it unnecessary to further consider the second count.

Section 432.070 RSMo 1949, V.A.M.S., upon which the respondent relies is as follows: "No county, city * * * or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing."

With reference to this statute the court in Aurora Water Co. v. City of Aurora, 129 Mo. 540, 578, 31 S.W. 946, 955, said: "Touching the objection that the contract was not made in writing, in conformity with section 3157, Rev.St., 1889, it is enough to say that the ordinance having been passed as required by law, which ordinance set forth the terms of the contract, and that ordinance being approved by the req-

uisite vote, and then accepted by the person or persons proposing to build the works, constituted a completed contract. * * * Under the rigid rule established by the statute of frauds, it was not necessary, in order to make a contract binding, that it should be all contained in one paper signed by the party to be charged; but the terms of the contract may be contained in one paper, and the signature may be found in some other paper, provided that such second paper properly refer to the terms of the containing paper. Fry, Spec.Perf. [3 Ed.], sec. 520. Numerous instances have occurred where letters have constituted the contract, the written evidence of and acceptance of it. Ib., secs. 270, 529. It surely was never intended by the legislature that a rule of greater stringency should be applied in instances like the present, than in those just instanced." And see State ex rel. Kansas City Ins. Agents' Ass'n v. Kansas City, 319 Mo. 386, 4 S.W.2d 427, 430(3).

It appears, therefore, that the contract sued on in this case was in writing. The resolution in question was pleaded. The resolution is alleged to have been duly adopted by the City Council, approved by the Mayor and duly signed, and a copy was attached to the amended petition. Notification of appointment and acceptance thereof were alleged to have been in writing and copies of the signed letters were attached. The formal execution of the contract was sufficient. Only the sufficiency of the written provision of the documents appear to be in question.

There is no contention here that the alleged contract was not within the scope of the powers of the municipality under the constitution and statutes of this state, nor that the agents of the City were not authorized in writing. Nor is there any contention that the services to be performed under the contract were not to be performed in the future, subsequent to execution of the contract.

We now direct our attention to the statute relied upon as a defense. The manifest purpose of Section 432.070, supra, has been said to be "that the terms of the contract shall, in no essential particular, be left in doubt, or be determined at any future time, but shall be fixed when the contract is entered into. This is one of the precautions taken to prevent extravagant demands, and to restrain officials from heedless and ill-considered engagements. * * * The statute also safeguards against fraud and peculation. It specifically regulates the mode by which the business of a municipality is to be transacted. No contractual obligation is incurred by a Missouri city in the absence of the writing prescribed." Bride v. City of Slater, Mo.Sup., 263 S.W.2d 22, 26; Woolfolk v. Randolph County, 83 Mo. 501, 506.

The question presented is whether the written promise of the City to pay "a reasonable compensation" for plaintiff's services was such a provision (concerning the consideration to be paid for the services to be performed in the future) as meets the test provided by the statute that "such contract, *including the consideration,* shall be in writing." If it was sufficient to meet this test the alleged contract was valid and binding. Respondent argues that "the alleged contract does not set out the consideration to be paid to appellant, but specifically states that *the consideration will be determined after appellant has rendered his services.*" (Italics ours.)

The second letter quoted from lends support to the view that the Mayor's "understanding" of the matter was that plaintiff's compensation was a matter of subsequent agreement between the parties. This letter expressing the Mayor's understanding was not a formal part of the contract between plaintiff and the City. The contract consisted of the resolution of the Council, the notice of appointment and the formal acceptance. Further, the Mayor's "understanding of the agreement" conflicted with the terms of the resolution adopted by the Council and signed by the Mayor. The resolution states the standard by which plaintiff's compensation was to be measured, to

**782**

wit: "reasonable compensation." The amount "to be fixed by the Council upon the completion of his service" was to be "a reasonable compensation for services." Compensation was therefore made a subject of the written covenant between the parties and a definite standard was set up therein by which to measure the compensation to be paid to plaintiff at the conclusion of his services.

Respondent relies particularly upon Bride v. City of Slater, supra, 263 S.W.2d 22 and Donovan v. Kansas City, 352 Mo. 430, 175 S.W.2d 874, 179 S.W.2d 108. In the Bride case, the alleged contract fixed the price of fuel-oil at "sellers market price on date of shipment." Plaintiff-appellant in that case contended that the consideration itself, as stated in the contract there involved, was definite and readily ascertainable at the date of any purchase. This court said: "The consideration or price defendant City undertook to pay by its contract with plaintiff was not in any certain sum. The price was entirely conditioned on the will of the seller." The court held that the contract lacked the statement of a vital essential contractual element prerequisite to a contract's validity under the statute, in that, the alleged contract failed to state a definite or certain price or consideration to be paid by the city and "the contract was 'void' and unenforceable, quite as if there had been no written contract at all." [263 S.W.2d 22, 26.]

No contract was involved or considered in the case of Donovan v. Kansas City, supra [352 Mo. 430, 175 S.W.2d 876]. The opinion states: "The petition is in two counts in the alternative. * * * Count one sounds in tort as for trover and conversion on the theory the title to the foods did not pass and seeks damages of the reasonable value of the foods. Count two is in equity and seeks the value of the benefits accruing to defendant. Plaintiff's core idea is that a contract is not involved." The case, however, does deal with unsuccessful efforts to circumvent the provisions of the statute in question by waiver, estoppel, tort, trover and equitable relief.

In the contract sued on by plaintiff-appellant, the City promised to pay "a reasonable compensation for services * * * to be fixed by the council upon the completion of his services." The contract therefore purports to state a consideration and the real issue in the case is presented by respondent's further contention that "the consideration had to be set out in the contract * * * a statement that a reasonable compensation would be paid is not a sufficient statement of the consideration to bring the present contract within the terms of Section 432.070, supra."

Respondent cites Woolfolk v. Randolph, 83 Mo. 501; County of St. Francois v. Brookshire, Mo.Sup., 302 S.W.2d 1; Elkins-Swyers Office Equipment Co. v. Moniteau County, 357 Mo. 448, 209 S.W.2d 127, 131; Grauf v. City of Salem, Mo.App., 283 S.W.2d 14; State ex rel. City of Mansfield v. Crain, Mo.App., 301 S.W.2d 415; Riley v. City of Rock Port, Mo.App., 165 S.W.2d 880; Likes v. Rolla, 184 Mo.App. 296, 167 S.W. 645; Crutchfield v. City of Warrensburg, 30 Mo.App. 456. Except for the Woolfolk case, hereinafter referred to, these cases do not aid respondent save insofar as they hold that Section 432.070 RSMo 1949, V.A.M.S., requires the contracts made by a city must be in writing and duly executed as provided in said statute. The requirements of the statute are mandatory, not directory, and a contract not so made is void. Kansas City v. Rathford, 353 Mo. 1130, 186 S.W.2d 570, 574(5-8); Bride v. City of Slater, supra, 263 S.W.2d 22, 26; Donovan v. Kansas City, supra, 175 S.W.2d 874, 881-882. Even though the municipality may have received the benefits of appellant's services, if his contract does not comply with the mentioned statute, the city cannot be held liable on any theory of estoppel, ratification or implied contract. Riley v. City of Rock Port, supra; Donovan v. Kansas City, supra, 175 S.W.2d 874, 881(8).

In the case of Woolfolk v. Randolph County, supra, it was admitted in the briefs of the respective parties that the action did not purport to be a suit on a written contract. There was no contention that a written contract was ever entered into and the court found from the petition that the contract entered into *was not in writing;* "and that the value of plaintiff's services was not agreed upon." The petition however did allege that plaintiff had, by proper order of record, been appointed to compromise and settle certain indebtedness of one of the townships in the county; and that, "by the terms of the order, plaintiff was to have and receive a reasonable compensation for his services." The court referred to this last allegation as stating "the compensation the law would ordinarily attach where the parties failed to make a contract price." Plaintiff construed his action to be one in quantum meruit for the reasonable value of work and labor done under the provisions of Section 1218, RSMo 1879. In holding that no cause of action was stated, the court relied on the failure of the contract to comply with what is now Section 432.070 RSMo 1949, V.A.M.S. The court said: "As we are led to construe the act, it requires, not only that the contract shall be in writing, dated when made and subscribed by the parties, but that the consideration, shall be ascertained and fixed, where such consideration, as in this case, is for services, such as are described, then the compensation therefor, must, as we think, be fixed in amount, or by rate." [83 Mo. 501, 506.] Since no written contract was sued on in that case and the sufficiency of no writing was determined, the court's construction of the statute is not controlling.

As stated, respondent contends that the statement in the written contract that "a reasonable compensation would be paid is not a sufficient statement of the consideration." In view of respondent's argument, we construe this contention to mean that the consideration stated was not definite, certain or fixed and that the contract, although in writing, was invalid and failed to comply with the statute.

■ Contracts made by a city, if authorized, are no different from other contracts and are measured by the same tests and subject to the same rights and liabilities. State ex rel. Kansas City Ins. Agents' Ass'n v. Kansas City, supra, 4 S.W.2d 427, 731 (7–10); 63 C.J.S. Municipal Corporations § 993, p. 560. It is well settled that a promise to be consideration for the promise of another must be definite and certain. Hudson v. Browning, 264 Mo. 58, 174 S.W. 393; Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054, 1062. A contract is not sufficiently definite and certain to be valid and enforceable, unless a court can determine therefrom the measure of damages in the event of a breach. Shofler v. Jordan, Mo.App., 284 S.W.2d 612, 615 (6–9) and cases cited. The essential terms of the contract must be certain, or capable of being rendered certain through application of ordinary canons of construction or by reference to something certain; that is, terms of agreement must be sufficiently definite to enable the court to give it an exact meaning. Shofler v. Jordan, supra. However, the consideration for a contract will not be held uncertain if by the application of the usual tests of construction, the court can reasonably discover to what the parties agreed. 17 C.J.S. Contracts § 98, p. 442; 17 C.J.S. Contracts § 36, c. (2), p. 367.

In Summers v. Peoples Elevator Co., Mo. App., 136 S.W.2d 81, 83, the court said: "One of the essential elements of a sale of personal property is a 'money price, either fixed by an agreement between the buyer and seller, or capable of being ascertained from their agreement.' Stout v. Carruthersville Hardware Co., 131 Mo.App. 520, 110 S.W. 619, 620. In the instant case the price was 'capable of being ascertained'; *it was the market price at the time of delivery."* (Italics ours). And see Hall v. Watson, Mo.Sup., 201 S.W.2d 277, 279 (1).

In Rankin v. Compton, Court of Errors and Appeals of New Jersey, 139 N.J.Eq. 389, 50 A.2d 642, 643, the court said: "The first point made is that the agreement is uncertain and is not, therefore, the proper subject of specific performance. This has relation to the provision ('reasonable charge') last adverted to. It is said that there is no 'measuring rod' or 'guide' by which a 'reasonable charge' is to be fixed, and, therefore, that this portion of the agreement is indefinite and uncertain. The inquiry is whether the parties have fixed a standard or measure of value so that the Court may, without making a contract, ascertain the price according to the standard thus fixed, and enforce the contract— e. g. 'fair price' or 'fair valuation.' Is 'reasonable charge' in this category? It would seem so."

In Commerce Trust Co. v. Aylward, Circuit Court of Appeals, Eighth Circuit, 145 F.2d 113, 115, the court said: " * * * where the amount of a trustee's compensation is not specifically fixed by statute or agreement, the trustee ordinarily is entitled to reasonable compensation for his services, whether the trust instrument does or does not so provide, and in either situation, in case of a dispute, where no provision has been made for disposing of the question, reasonable compensation means such compensation as may be ultimately approved or allowed by a court of competent jurisdiction, in a proper proceeding brought by either party."

A provision in a note for payment of the reasonable expense of collection, including a reasonable attorney's fee, if the note is placed in the hands of an attorney for collection, is a valid contractual provision. German-American Bank v. Martin, 129 Mo.App. 484, 488, 107 S.W. 1108; Bank of Neelyville v. Lee, 182 Mo.App. 185, 191, 168 S.W. 796; Townsend v. Alewel, Mo. App., 202 S.W. 447. It would not be said that such a provision was void for uncertainty, or indefiniteness. And see 11 C.J.S. Bills and Notes § 726e, p. 278. In determining a reasonable attorney's fee, the court may consider the amount and character of the services, the labor, time and trouble involved, the nature and importance of the litigation or business in which the services are rendered, the amount or value of the property involved, the skill or experience called for, and the professional character and standing of the attorney. Scheufler v. Continental Life Ins. Co., 350 Mo. 886, 169 S.W.2d 359, 363; Trimble v. Kansas City, S. & G. Ry. Co., 201 Mo. 372, 381, 100 S.W. 7; Haley v. Horwitz, Mo.App., 290 S.W.2d 414, 418(4); Sain v. Bogle, 122 Ark. 14, 182 S.W. 515, 518(5).

We think contract sued on was definite and certain in its terms and stated a definite standard by which the consideration to be paid to plaintiff could be definitely determined. That is certain in law which can be made certain, as by computation or reference to extrinsic facts referred to. Klaber v. Lahar, Mo.Sup., 63 S.W.2d 103, 107(3). The statement of consideration was sufficient and the contract pleaded was valid. Even if the contract be considered to be one for personal services and subject to termination at the will of either party, such would not defeat plaintiff's right to recover on the contract for services rendered and on the basis stated in the terms of the contract. Hubbard v. Turner Dept. Store Co., 220 Mo.App. 95, 278 S.W. 1060; O'Dell v. Hurt, Mo.App., 106 S.W.2d 526.

The mere fact that, at the time the contract was executed, the amount to be paid by the City could not then be determined in dollars and cents did not adversely affect the validity of the contract. In the case of State ex rel. Kansas City Ins. Agents' Ass'n v. Kansas City, supra, 4 S.W.2d 427, 429, an ordinance had been passed by Kansas City and accepted by relator and the consideration stated therein to be paid to relator each year for maintaining and operating a fire patrol for the city was stated, in part, as follows: "Sec. 5. All revenues derived by Kansas City by licenses paid by * * * fire insurance brokers on hand and unexpended, shall be

appropriated for and paid over to the said Kansas City Insurance Agents' Association, for the purpose of supporting and maintaining the said fire patrol and salvage corps, and all such revenues which may hereafter be derived from such sources last above enumerated by Kansas City shall be appropriated for and paid over to said association for the support and maintenance of said fire patrol and salvage corps quarterly on the first days of January, April, July, and October of each year, said sums so appropriated to be expended under the direction and control of said Kansas City Insurance Agents' Association * * *." The court held that "the requirement that a contract with the city must be in writing was complied with when the council enacted the ordinance and plaintiff accepted it in writing" [4 S.W.2d 427, 430]. It is apparent that the amount of consideration to be paid by the City under the contract could not have been determined in advance, or the amount of dollars and cents determined when the contract was executed. And see Vivian v. Robertson, 176 Mo. 219, 224, 75 S.W. 644, 645 (a contract for the sale of merchandise), where on the facts stated the price to be paid depended on future markets, but the court said: "The standard by which the price of the goods was to be determined was fixed by the contract."

The contract in question being in writing and expressly providing for reasonable compensation for services to be rendered and which have been rendered was sufficiently definite and certain as to the consideration to be paid so as to constitute a valid contract under Section 432.070, supra. State ex rel. Kansas City Insurance Agents' Ass'n v. Kansas City, supra; Brunner v. Stix, Baer & Fuller Co., 352 Mo. 1225, 181 S.W.2d 643, 645(2) and authorities there cited; Pillois v. Billingsley, D.C., 84 F.Supp. 305, affirmed 2 Cir., 179 F.2d 205; Rustin v. Norman, 25 Ga. App. 342, 103 S.E. 194; Illinois Educational Ass'n v. Strauder, 78 Ill. 35.

Since the first count of the amended petition stated a claim upon which relief can be granted, and the only defense urged as to either count was the failure of the contract to comply with the mentioned statute, which contention cannot be sustained, the court erred in sustaining the motion to dismiss the amended petition.

The judgment is reversed and the cause remanded with directions to overrule the motion to dismiss the first count of the amended petition.

All concur.