The **HANOVER INSURANCE COMPANY**, Plaintiff,

v.

**CAMERON COUNTRY MUTUAL INSURANCE COMPANY**, Defendant.

No. 85–2390 C (2).

United States District Court, E.D. Missouri, E.D.

Jan. 16, 1990.

Brown, James & Rabbitt, Russell F. Watters, St. Louis, Mo., for plaintiff.

Kortenhof & Ely, Michael R. Swafford, St. Louis, Mo., Ross Anderson, Coffelt & Coffelt, P.C., Clayton, Mo., and Dale L. Davis, Bussell, Hough, O'Neal, Crouch & Hall, Springfield, Mo., for defendant.

## MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court for a decision on the merits after trial to the Court. The parties have filed post-trial briefs and responses thereto. The Court adopts this memorandum opinion as its findings of fact and conclusions of law, pursuant to Fed.R.Civ.P. 52.

The plaintiff, Hanover Insurance Company ("Hanover"), brought suit against the Cameron Country Mutual Insurance Company ("Cameron") for breach of contract.[1] Hanover issued a policy of insurance No. HNL–0839540 ("Hanover's policy") to Paul Weaver ("insured"). It covered his premises located in Van Buren, Missouri ("Van Buren premises"). The coverage was as follows: dwelling ($35,000); personal property ($17,500); additional living expenses ($10,500); other structures ($3,500); and fire department service charges ($250).

---

**1.** Hanover also sought a declaratory judgment. That matter was dismissed.

That policy was in effect on December 25, 1983.

Lorene Weaver is the estranged wife of the insured. She is also an insurance agent. On December 12, 1983 at the insured's request, she submitted an application for insurance (in his name only) to Farmer's Mutual Insurance Company of Sikeston. The application was for the same property covered by Hanover's policy. The application was submitted with a check for the premium payment. Cameron took over the assets and liabilities of Farmers Mutual Insurance Company of Sikeston and for purposes of this lawsuit is the same defendant.[2]

On December 15, 1983 Mrs. Weaver and an inspector working for Cameron went to the Van Buren premises. The two discussed both the fact that the house did not satisfy Cameron's underwriting rules and that Mrs. Weaver felt obliged to insure with Farmers. Mrs. Weaver had Cameron return the insurance application and the premium check. By that time, however, a policy number (FO–09–5119) had been assigned under the application. On December 19, 1983 Cameron sent a letter to the insured informing him that it would not issue a policy at the request of Lorene Weaver. In that letter, Cameron expressed its intention to be bound under the application until December 20, 1983.

The coverage under the application was as follows: dwelling ($35,000); personal property ($10,500); appurtenant structures ($1,000); additional living expenses ($3,500); and fire department service charges ($250).

On December 25, 1983 a fire broke out at the insured's premises. The Weaver fire loss and damages were investigated by Joe Shively for Hanover and Dwain Ogden for Cameron. Early in the investigation, a dispute arose between Cameron and Hanover as to whether Cameron had coverage on the Weaver fire loss. The parties stipulated to the loss as follows: dwelling ($35,000); personal property ($17,500); other

structures ($1,082); additional living expenses ($375) and fire department service charges ($250). On April 4, 1984 Hanover issued a check to the insured for the dwelling and personal property loss. By July 25, 1984 Hanover paid to the insured $54,207.

On March 14, 1984 the insured wrote the director of the Division of Insurance complaining that his loss had not yet been settled by Hanover. Someone from the Division of Insurance contacted Debbie Wright, a branch claims manager for Hanover. She explained that Hanover was having a dispute with Cameron over the fire loss. Eventually, a representative of the Division of Insurance contacted Mr. Dice, vice-president of claims for Cameron. Dice then instructed Dillon, a branch claims manager for Cameron, to prorate the loss with Hanover's coverage.

The agreement to prorate was expressed in a letter dated June 7, 1984 from Dillon to Wright.[3] Incorporated in that correspondence was a June 1, 1984 letter from Dillon to Ogden. In that letter, Dillon wrote: "Hanover expects us to honor their subrogation to the extent of our apportioned liability under our policy. I have agreed to do so." The June 1 letter also outlines the formulas prepared by Cameron to determine its pro rata liability. Hanover agreed to abide by the formulas.

The letter concludes as follows:

It would appear, based on figures available at this time that there is a distinct possibility that there would be no additional payment directly to the insured under our policy. Settlement drafts issued under our policy would, of necessity, name the insured and Hanover Insurance as subrogee of the insured.

In his deposition, Dillon claims that the only reason Dice decided to prorate was "to get the Insurance Commission off his back." Dillon went on to say that Dice made that decision despite the fact that he knew Cameron had no contractual obli-

---

**2.** Throughout the pleadings in this cause, the defendant has been improperly referred to as Cameron Mutual Insurance Company.

**3.** Both Dillon and Dice had the authority to bind Cameron to the agreement.

gation to do so. Yet, it appears from a May 11, 1984 letter that Dillon wrote to the Consumer Service Representative of the Division of Insurance that he himself felt Cameron had an obligation to prorate. In that letter Dillon wrote:

It was decided that due to the fact that a policy number had been assigned and the letter sent extending coverage through December 20, 1983, (we believe the December 20th date to be a typographical error and should have been December 30th, which would have extended coverage for the usual ten (10) days, plus three (3) days for notice to reach insured)[4] that we should accept our apportioned liability with the Hanover Insurance Company and attempted to proceed accordingly.

The handling independent adjuster did attempt to perform, but as stated above, was advised by Paul Weaver that he did not want this company to perform and that he was looking to Hanover to pay the loss. Quite frankly, we expected Hanover to pay the loss and to look to us for our apportment of the loss, which we stood ready to pay.

I have instructed the adjuster to reopen his file, establish the amount of our liability and to conclude this matter by payment as soon as possible.

On June 13, 1984 Ogden tendered a proof of loss to the insured. He refused to sign it.[5] On June 29, 1984 Dillon informed Wright that Cameron would not abide by the pro rata agreement.

Courts analyze whether parties agree to a contract in terms of offer and acceptance. "An offer is the 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Newman v. Schiff,* 778 F.2d 460, 465 (8th Cir.1985) (*quoting Restatement (Second) of Contracts* § 24). *See also Coffman Industries, Inc. v. Gorman–Taber Co.,* 521 S.W.2d 763, 768 (Mo. App.1975).

Here, it is clear from the above-cited findings of fact that Cameron and Hanover agreed to prorate the Weaver loss. Defendant concedes that it failed to pay under the terms of that agreement. Defendant argues, however, that it was not obligated to pay because: (1) there was no contract due to lack of consideration; (2) the contract was void from its inception for public policy reasons; and (3) a condition subsequent to the effective contract did not occur.

The Federal Rules of Civil Procedure determine the manner and time in which defenses may be raised and when waiver occurs. *Taylor v. U.S.,* 821 F.2d 1428 (9th Cir.1987), *cert. denied,* 485 U.S. 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988). Failure of consideration is listed as an affirmative defense and must be so raised or it is considered waived. Fed.R.Civ.P. 8(c); *Seaboard Surety Co. v. Harbison,* 304 F.2d 247 (7th Cir.1962).[6] Defendant did not plead lack of consideration as an affirmative defense and therefore the issue is deemed waived.[7]

**4.** When an insurance company cancels a policy, it must give the insured thirteen days notice. When the insured asks to be cancelled, no such notice is required.

**5.** In December of 1984 Weaver brought suit against Cameron in the Circuit Court of Reynolds County, Missouri alleging a policy of insurance existed between them. The parties settled the case before there was a ruling.

**6.** Missouri rule concerning pleading affirmative defenses, Mo.Rev.Stat. § 509.090 (1986), is identical to Federal Rule of Civil Procedure Rule 8(c).

**7.** Even if the Court were to address the consideration issue, the rule in Missouri is well settled that a compromise of a disputed claim is a

valuable and sufficient consideration to support a promise. *Charles F. Curry and Company v. Hedrick,* 378 S.W.2d 522, 531 (Mo.1964). The May 11, 1984 letter from Dillon to the Division of Insurance expresses that there was in fact a "disputed claim."

Cameron misconstrues many of the issues before this Court. It doesn't matter whether Cameron correctly or incorrectly determined that coverage might exist in favor of Paul Weaver or that many of the payments made by Hanover to the insured were not made in reliance on any promise made by Cameron. What does matter is that Cameron and Hanover settled what they believed to be a disputed claim.

As to the public policy and condition subsequent arguments, they were raised for the first time in a motion to dismiss at the beginning of trial. Plaintiff objected to the submission of evidence of those issues. This Court did not rule on the objections. Rather, it informed the parties that it would hear all the evidence and later decide whether those defenses were timely raised or waived. Having reviewed the file, the Court concludes that allowing the defendant to raise two new issues at the time of trial would result in unfair prejudice to the plaintiff.

 The only issue that remains is whether the agreement to prorate was sufficiently definite and certain to be enforced by this Court. If this Court can ascertain the measure of damages because of Cameron's breach, it will enforce the contract. *Burger v. City of Springfield*, 323 S.W.2d 777, 783 (Mo.1953). Here, the essential terms of the contract are certain and by simple calculations, this Court can compute the damages. As already noted, the terms of the agreement were contained in the June 1 letter from Dillon to Ogden which was forwarded to Wright on June 7, 1984.

Cameron agreed to pay fifty percent of the loss to the dwelling; twenty-two percent of the damages to "other structures;" thirty-seven and one-half percent of the personal property loss; twenty-five percent of the additional living expenses; and fifty percent of the fire department service charges. Given that the damages are definite, Cameron was obliged to pay $17,500 for the dwelling; $6,562.50 for personal property; $93.75 for additional living expenses; and $125.00 for fire department service charge. Therefore, the Cameron prorated portion of the loss amounts to $24,281.25.

Plaintiff has asked for prejudgment interest at the rate of nine percent from the date of defendant's breach. While the Court agrees that plaintiff is entitled to prejudgment interest of nine percent, the Court will calculate that interest from the date Hanover made its last payment to Weaver for the loss, July 25, 1984.

Accordingly, judgment shall be entered in favor of the plaintiff in the amount of $36,255.55.

An appropriate order shall accompany this memorandum.

## JUDGMENT

In accordance with the memorandum opinion filed this date and incorporated herein,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that plaintiff shall have judgment against defendant in the amount of $36,255.55, plus any post-judgment interest calculated at the rate of 7.74 percent per annum, with defendant bearing the costs of this action.