Cary NEWSOME, Respondent,

v.

KANSAS CITY, MISSOURI SCHOOL
DISTRICT, Appellant.

No. SC 95538

Supreme Court of Missouri,
**en banc.**

Opinion issued May 16, 2017

Rehearing Denied June 27, 2017

The school district was represented by Tyson H. Ketchum and Jeffery T. McPherson of Armstrong Teasdale LLP in Kansas City, (816) 221-3420; and Shana J. Long and Ivan L. Nugent of the school district's legal services department in Kansas City, (816) 418-7610.

Newsome was represented by Eric W. Smith, Rik N. Siro, Athena M. Dickson and Raymond A. Dake of Siro Smith Dickson PC in Kansas City, (816) 471-4881.

Zel M. Fischer, Judge

The Kansas City School District appeals the circuit court's judgment awarding Cary Newsome $500,000 in damages on his

claim for wrongful discharge in violation of public policy. The District argues the circuit court erred in: (1) overruling its motion for judgment notwithstanding the verdict because Newsome failed to make a submissible case; (2) overruling its motion for new trial because the verdict director submitted to the jury was erroneous; and (3) overruling its motion for remittitur because the award exceeded that which is allowed by law. This Court remits the award to $403,139, and affirms the circuit court's judgment in all other respects.

## I. Factual and Procedural History

Working for the District as a purchasing manager, Newsome was responsible for administering the District's purchasing and contract functions in compliance with state law and the District's policies and procedures. Relevant to this appeal are two requests Newsome received shortly before his termination. In June 2011, the District's superintendent asked Newsome to adjust the purchase order for Ron Epps so Epps, an independent consultant, could be paid for additional visits not specified in his contract with the District. Newsome, believing it was illegal in Missouri to alter contracts after the fact, reported his concerns about the Epps payment request to his supervisor, Rebecca Lee-Gwin. Lee-Gwin agreed with Newsome and took the request under advisement.

Later that week, Newsome objected to a separate request. After the District's facilities department made a purchase request for three vehicles, Newsome identified a state contract with a Ford dealership for Explorers and Escapes on which the District could "piggyback." The school board approved the purchase of three Explorers from the dealership, but Newsome subsequently learned the dealership could only provide three Escapes by June 30, the

desired procurement date. Despite the vehicle change, the facilities department wanted to proceed with the purchase of Escapes—which had a lower value than the Explorers—for a price that was at or near the same price as the Explorers and was higher than the price provided for Escapes under the state contract. Concerned this purchase would violate state law and the District's policies, Newsome reported the proposed Escapes purchase order to Lee-Gwin, who initially agreed with Newsome and told him to cancel it. Lee-Gwin, though, later changed her mind and told Newsome to go ahead and issue the Escapes purchase order. When Newsome objected, Lee-Gwin told him that she "didn't want to hear anything else about it" and that he "needed to take care of it." Newsome prepared the Escapes purchase order and placed a memorandum in the District's electronic accounting system documenting his concerns that the purchase was for different vehicles and a different price than approved by the school board. He also attached a hard copy of his memorandum to the Escapes purchase order.

Three days later, on June 27, the District presented Newsome with the option of resigning and accepting $20,000 or being terminated. To receive the $20,000, Newsome had to sign a "General Release and Waiver of Claims," which waived all claims he may have against the District. He signed the waiver that day and resigned but, as allowed by the terms of the waiver, timely revoked his signature and rescinded his resignation on June 30. The District then terminated Newsome's employment.

Newsome filed a petition for damages against the District, asserting a claim of wrongful discharge in violation of public policy.[1] The case proceeded to a jury trial.

---

1. Newsome also asserted a claim of employment discrimination and retaliation in viola-

At the close of evidence, the District moved for a directed verdict, which was overruled. The circuit court, over the District's objection, then submitted to the jury a verdict director ("Instruction 15") requiring the jury to find, among other elements of the claim, that Newsome either "refused to approve a payment to Ron Epps that he reasonably believed would violate School District contracting law" or "reported to a superior that he reasonably believed the purchase of Ford Escapes would violate School District contracting law."

The jury returned a verdict in favor of Newsome on his wrongful discharge claim and assessed Newsome's damages at $500,000. The circuit court entered judgment in accordance with the jury's verdict. The District then filed motions for judgment notwithstanding the verdict, a new trial, and remittitur, all of which were overruled. The District appealed and, after opinion by the court of appeals, this Court transferred the case pursuant to article V, § 10 of the Missouri Constitution. The District raises six points on appeal, which are divisible into three categories: claims the circuit court erred in overruling its motion for judgment notwithstanding the verdict (Points I and IV); claims the circuit court erred in overruling its motion for new trial (Points II and III); and claims the circuit court erred in overruling its motion for remittitur (Points V and VI).

## II. Motion for Judgment Notwithstanding the Verdict

■ In Points I and IV, the District argues the circuit court erred in overruling

its motion for judgment notwithstanding the verdict because Newsome did not make a submissible case.[2] When reviewing a circuit court's overruling of a motion for judgment notwithstanding the verdict, "[t]his Court must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. banc 2010). "Evidence is viewed in the light most favorable to the jury's verdict, giving the plaintiff all reasonable inferences and disregarding all conflicting evidence and inferences." *Id.* "Whether the plaintiff made a submissible case is a question of law that this Court reviews *de novo.*" *Ellison v. Fry*, 437 S.W.3d 762, 768 (Mo. banc 2014). A motion for judgment notwithstanding the verdict "should be granted if the defendant shows that at least one element of the plaintiff's case is not supported by the evidence." *Id.*

■ Point IV will be addressed first because it raises a threshold matter of sovereign immunity. "Sovereign immunity is not a defense to suit but, rather, it is immunity from tort liability altogether...." *State ex rel. City of Grandview v. Grate*, 490 S.W.3d 368, 369 (Mo. banc 2016). For suits against public entities, sovereign immunity is the rule, not the exception. *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921–22 (Mo. banc 2016). As such, to make a submissible case, Newsome had the burden of proving the District waived its sovereign immunity. *See*

tion of the Missouri Human Rights Act, but the jury returned a verdict in favor of the District on that claim and it is not a subject of this appeal.

**2.** The District preserved its claims of error in Points I and IV by first including them in a motion for a directed verdict at the close of

Newsome's evidence (with the motion renewed after the District rested), and then again in a timely motion for judgment notwithstanding the verdict after the circuit court entered judgment. *See* Rule 72.01(a)–(b); *Sanders v. Ahmed*, 364 S.W.3d 195, 207–08 (Mo. banc 2012).

*Randel v. City of Kansas City*, 467 S.W.3d 383, 387 (Mo. App. 2015); *see also St. John's Clinic, Inc. v. Pulaski Cnty. Ambulance Dist.*, 422 S.W.3d 469, 471 (Mo. App. 2014) ("Sovereign immunity is not an affirmative defense but is part of the plaintiff's *prima facie* case. This is well settled.") (internal citation and quotations omitted).

■ Pursuant to § 537.610.1,[3] a political subdivision, such as the District, may purchase liability insurance for tort claims and, in doing so, waive its sovereign immunity for claims covered by the insurance policy. Here, it is undisputed the District purchased liability insurance covering the type of claim Newsome brought. The District, though, argues it preserved its sovereign immunity that would have otherwise been waived by its purchase of liability insurance because its 2011-12 policy included an endorsement ("Endorsement 13")'stating the insurer "shall not be liable to make any payment for Loss in connection with any Claim made against any Insured ... that is barred by the defense of sovereign immunity" and "nothing contained in this Policy shall constitute a waiver of the defense of 'sovereign immunity.[']" This Court has held a political subdivision preserves its sovereign immunity when it "purchase[s] an insurance policy that disclaim[s] coverage for any actions that would be prohibited by sovereign immunity." *City of Grandview*, 490 S.W.3d at 372.

■ While both the District and Newsome argue over the effective date of Endorsement 13, as well as whether the

District's 2011-12 policy or 2010-11 policy applies to Newsome's claim,[4] this Court need not reach those issues because Endorsement 13 never became part of the 2011-12 policy. Section 432.070 provides:

> No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, **and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.**

(Emphasis added). As Newsome points out, Endorsement 13, which was not part of the original 2011-12 policy but was negotiated several months later, was not subscribed to by any authorized and appointed agent of the District.[5] This fact is not disputed. Section 432.070 "requires the contracts made by a [school district] must be in writing and duly executed as provided in said statute. The requirements of the statute are mandatory, not directory, and a contract not so made is void." *Burger v. City of Springfield*, 323 S.W.2d 777, 782 (Mo. 1959).[6] Because the attempted execution of Endorsement 13 did not comply with all of the requirements of § 432.070, the District cannot rely on Endorsement 13 to preserve sovereign immunity that

---

**3.** Statutory citations are to RSMo Supp. 2013.

**4.** Newsome argues for application of the District's 2010-11 policy, which does not contain any language that could be construed as preserving the District's sovereign immunity.

**5.** "Missouri courts have recognized that the word 'subscribe' literally means [t]o sign at

the end of a document." *Kindred v. City of Smithville*, 292 S.W.3d 420, 426 (Mo. App. 2009) (internal quotations omitted).

**6.** Section 432.070 has been amended since this Court's decision in *Burger,* but not in any respect material to this Court's analysis.

was otherwise waived by its purchase of liability insurance.[7]

 With that threshold issue aside, the District argues in Point I that the circuit court erred in overruling its motion for judgment notwithstanding the verdict because Newsome failed to present substantial evidence in support of every element of a claim for wrongful discharge in violation of public policy. "The public policy exception to the at-will employment rule, often called the wrongful discharge doctrine, is very narrowly drawn." *Margiotta v. Christian Hosp. Ne. Nw.*, 315 S.W.3d 342, 346 (Mo. banc 2010). "An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities." *Fleshner*, 304 S.W.3d at 92. There are thus two distinct categories recognized by this Court: (1) refusal to violate public policy; and (2) reporting violations of public policy, also known as "whistleblowing."

 The District first argues Newsome's claim cannot fall under the whistleblowing category because he reported wrongdoing only to Lee-Gwin, the alleged wrongdoer. The District relies on *Drummond v. Land Learning Foundation*, 358 S.W.3d 167, 171 (Mo. App. 2011), which held "a report of wrongdoing to the wrongdoer is insufficient to invoke the whistleblowing public policy exception." While the District makes this argument for both the Epps payment request and the Escapes purchase order, only the Escapes purchase order was submitted to the jury based on a whistleblowing theory; the Epps payment request was submitted to the jury based on a theory of refusal, not whistleblowing. As for the Escapes purchase order, this Court has no occasion to either adopt or reject the rule expressed in *Drummond* because, in this case, the report of wrongdoing was not to the wrongdoer. Lee-Gwin was not the alleged wrongdoer when Newsome first reported to her that the facilities department's request to purchase Escapes would violate the District's policies and state law. Instead, she initially agreed with Newsome and told him to cancel the purchase order. That she later directed him to process the purchase order does not make her a wrongdoer at the time of the report.[8]

 In addition, the District argues Newsome presented no evidence that either the Epps payment request or the Escapes purchase order violated public policy. For a wrongful discharge claim, "the public policy must be *reflected by* a constitutional provision, statute, regulation promulgated pursuant to statute, or a rule created by a governmental body." *Fleshner*, 304 S.W.3d at 96. Newsome, for both the Epps payment request and the Es-

**7.** In its reply brief, the District concedes Endorsement 13 was not subscribed to by an authorized and appointed agent of the District, but nevertheless suggests both of its insurance policies had the same defect. However, the District's point on appeal is based only on the effectiveness of Endorsement 13's preservation of sovereign immunity, not the ineffectiveness of the policies' waiver of sovereign immunity. The latter issue is not before this Court. See Rule 84.13(a).

**8.** At oral argument, the District also argued that, for the Epps payment request, Newsome's actions did not constitute a refusal for purposes of the public policy exception. This argument was not included in the District's briefs and, therefore, shall not be considered. See Rule 84.13(a).

capes purchase order, presented evidence he was asked to facilitate transactions that were outside the terms of the District's approved contracts and he argued to the circuit court these transactions would violate the public policy reflected by § 432.070. Unauthorized transacting by a school district indeed violates the public policy reflected by the mandatory contracting requirements for school districts, discussed above, in § 432.070:

> The manifest purpose of [§ 432.070] is that the terms of the contract shall, in no essential particular, be left in doubt, or to be determined at some future time, but shall be fixed when the contract is entered into. This was one of the precautions taken to prevent extravagant demands, and to restrain officials from heedless and ill-considered engagements.

*Investors Title Co. v. Hammonds*, 217 S.W.3d 288, 294 (Mo. banc 2007) (internal quotations omitted).

The District, though, insists the public policy exception does not apply here because Newsome reported merely *requests* that would violate public policy. For the Epps payment request, the District argues Newsome "complained only that certain payments had been requested, not that any payments were ever made." This argument again fails to recognize the Epps payment request was submitted under a refusal theory, not a whistleblower theory. For the Escapes purchase order, the District similarly argues Newsome reported only a request to purchase, rather than the actual purchase. Newsome did not have to wait for the purchase to be finalized before he reported his concerns. It was sufficient Newsome reported the facilities depart-

ment's intent to go through with the unauthorized purchase. To hold otherwise would mean no whistleblower protection for preventive reporting, which would be inconsistent with this Court's reason for adopting the public policy exception. *See Fleshner*, 304 S.W.3d at 92 (adopting the public policy exception because, otherwise, employers would be able "to discharge employees, without consequence, for doing that which is beneficial to society"). The circuit court did not err in overruling the District's motion for judgment notwithstanding the verdict. Points I and IV are denied.

## III. Motion for New Trial

In Points II and III, the District argues the circuit court erred in overruling its motion for new trial based on errors in Instruction 15.[9] "[W]hether the jury was properly instructed is a question of law that is reviewed *de novo.*" *Chavez v. Cedar Fair, LP*, 450 S.W.3d 291, 294 (Mo. banc 2014). "This Court will only vacate a judgment on the basis of an instructional error if that error materially affected the merits of the action." *Id.* (internal quotations omitted). "Accordingly, the party challenging the instruction must show that the offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction." *Id.* (internal quotations omitted). Instruction 15 stated:

> Your verdict must be for plaintiff if you believe:
>
> *First*, either:
>
> Plaintiff refused to approve a payment to Ron Epps that he reasonably believed

---

9. The District preserved the claims of error in Points II and III by properly including them in a motion for a new trial, rather than its motion for judgment notwithstanding the ver-

dict. *See* Rule 78.01; *Buttram v. Auto–Owners Mut. Ins. Co.*, 779 S.W.2d 1, 3 n.1 (Mo. App. 1989).

would violate School District contracting law, or

Plaintiff reported to a superior that he reasonably believed the purchase of Ford Escapes would violate School District contracting law;

and

*Second,* defendant discharged Plaintiff, and

*Third,* any one or more instances of the conduct of Plaintiff as submitted in paragraph First was a contributing factor in his discharge; and

*Fourth,* as a direct result of his discharge, plaintiff sustained damage.

The District argues in Point II that Instruction 15 was erroneous because it required the jury to find only that Newsome "reasonably believed" the Epps payment request or the Escapes purchase order would violate public policy, rather than requiring the jury to find such transactions would indeed violate public policy. The applicable approved jury instruction in this case is MAI 38.03, which provides:

Your verdict must be for plaintiff if you believe:

First, plaintiff *(here describe plaintiff's act or refusal to act such as "refused to submit duplicate billing to Medicare," or "reported suspected child abuse to the Division of Family Services"),*

and

Second, defendant discharged plaintiff, and

Third, such conduct of plaintiff as submitted in paragraph First was a contributing factor in his/her discharge, and

Fourth, as a direct result of his/her discharge, plaintiff sustained damage.

(Footnote omitted).

 Whether a plaintiff reasonably believes an act violates public policy is irrelevant to a wrongful discharge claim.

*See Margiotta,* 315 S.W.3d at 348. The proper instruction would have merely required the jury to find Newsome refused to approve the Epps payment request or reported the Escapes purchase order, rather than have the jury additionally find Newsome "reasonably believed" the transactions would violate public policy.

 "Deviations from applicable approved instructions constitute error." *Graham v. Goodman,* 850 S.W.2d 351, 355 (Mo. banc 1993). The District is, therefore, correct that Instruction 15 was erroneous. "However, the prejudicial effect of such error is to be judicially determined." *Id.* Here, there was no prejudice. Contrary to the District's argument, a correct instruction would not have required the jury to find the transactions violated public policy. MAI 38.03 simply contains no such requirement because whether an act violates public policy is an issue of law for the circuit court to decide in determining whether the plaintiff has made a prima facie case. The Notes on Use for MAI 38.03 state: "The act(s) inserted must be in accordance with *Fleshner v. Pepose Vision Institute, P.C.,* 304 S.W.3d 81, 92 (Mo. banc 2010), which adopted the public policy exception for discharge of an at-will employee[.]" In other words, only after the circuit court decides an act constitutes a violation of public policy as *"reflected by* a constitutional provision, statute, regulation promulgated pursuant to statute, or a rule created by a governmental body," *Fleshner,* 304 S.W.3d at 96, may the circuit court then submit an instruction to the jury based on the act. While Instruction 15 superfluously required the jury to find Newsome "reasonably believed" there was a public policy violation, this instructional error could not have prejudiced the District because it merely required the jury to find a fact it did not need to find.

In Point III, the District takes issue with the phrase "School District contracting law" in Instruction 15, arguing it is vague and undefined. Again, though, the jury was not required to find the transactions would violate any law or public policy because that was an issue of law for the circuit court to determine before submission of the case to the jury. While the reference to "School District contracting law" was a superfluous and erroneous addition to Instruction 15, it could not have prejudiced the District for the same reason discussed above. The circuit court did not err in overruling the District's motion for new trial. Points II and III are denied.

## IV. Motion for Remittitur

In Points V and VI, the District argues the circuit court erred in overruling its motion for remittitur because the judgment exceeds the statutory maximum that may be awarded against a school district for a tort claim pursuant to § 537.610.[10] "Statutory interpretation is an issue of law that this Court reviews *de novo.*" *Barker v. Barker*, 98 S.W.3d 532, 534 (Mo. banc 2003). "This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Parktown Imps., Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009). Section 537.610.1 provides in full:

> The commissioner of administration, through the purchasing division, and the governing body of each political subdivision of this state, notwithstanding any other provision of law, may purchase liability insurance for tort claims, made against the state or the political subdivision, **but the maximum amount of such coverage** shall not exceed two million dollars for all claims arising out of a single occurrence and **shall not exceed three hundred thousand dollars for any one person in a single accident or occurrence,** except for those claims governed by the provisions of the Missouri workers' compensation law, chapter 287, **and no amount in excess of the above limits shall be awarded or settled upon.** Sovereign immunity for the state of Missouri and its political subdivisions is **waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section** and in such amount and for such purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state.

(Emphasis added). Section 537.610.2 likewise provides:

> **The liability of the state and its public entities on claims within the scope of sections 537.600 to 537.650,** shall not exceed two million dollars for all claims arising out of a single accident or occurrence and **shall not exceed three hundred thousand dollars for any one person in a single accident or occurrence,** except for those claims governed by the provisions of the Missouri workers' compensation law, chapter 287.

(Emphasis added). Section 537.610.5 further provides for annual adjustments on the limit amounts listed, and, at the time of the circuit court's judgment in 2014, the limit amount for a single accident or occurrence was $403,139 (rather than $300,000). 39 Mo. Reg. 167 (Jan. 2, 2014).

10. Newsome argues the District failed to preserve the claims of error in Points V and VI because the District did not include them in its motion for directed verdict. Because a motion for directed verdict is necessarily made prior to a judgment, *see* Rule 72.01(a), it cannot be the vehicle to challenge an award that does not yet exist. The District preserved its claims of error by including them in a timely motion for remittitur. *See* Rule 78.10.

■ The District argues in Point V that the award should be remitted to $403,139 based on these provisions. Newsome, on the other hand, argues the $500,000 award should stand because the District waived its sovereign immunity up to the amount of liability coverage it purchased, which, for either policy, exceeded the award of $500,000.[11] By the plain language of §§ 537.610.1 and .2 and, as adjusted pursuant to § 537.610.5, the District's liability coverage could not exceed $403,139 for a single claim, its sovereign immunity could only be waived up to this amount for a single claim, and no amount in excess of $403,139 could be awarded for a single claim. Contrary to Newsome's argument, the fact the District purchased liability coverage in excess of $403,139 is immaterial; it could not, by law, waive its sovereign immunity to an amount exceeding the limits of § 537.610.

■ While Newsome's argument has no basis in the plain language of § 537.610, he points to *Kunzie v. City of Olivette*, 184 S.W.3d 570, 574 (Mo. banc 2006), wherein this Court stated procurement of liability insurance "constitutes an absolute and complete waiver of all immunities." *Kunzie* did not involve an award exceeding the limits of § 537.610, and its reference to "an absolute and complete waiver of all immunities" should not be read to suggest a political subdivision waives its sovereign immunity up to the amount of its liability coverage even when that amount exceeds the limits of § 537.610.[12] No such provision is found in § 537.610. This Court "cannot add statutory language where it does not exist." *Peters v. Wady Indus., Inc.*, 489

S.W.3d 784, 792 (Mo. banc 2016) (internal quotations omitted). Accordingly, $403,139 was the maximum amount to which the District could waive its sovereign immunity and the maximum amount that could be awarded against it. Point V is granted.

■ Finally, in Point VI, the District argues the maximum allowable judgment discussed in Point V, $403,139, should be further reduced by $250,000—the amount of the retention in the 2011-12 policy that is "to be borne by the insureds and shall remain uninsured."[13] As discussed, § 537.610.1 provides sovereign immunity is waived up to "the maximum amount" of coverage purchased and allowed by law. The premise of the District's argument is that the retention amount does not count as coverage for purposes of the statute. Nothing in § 537.610 indicates this is the case. But assuming, *arguendo*, the District's premise to be true, that would mean a policy's amount of coverage would equal the limit of liability reduced by the retention. That would not help the District. For both the 2010-11 policy and the 2011-12 policy, the limit of liability reduced by the retention amount would far exceed $403,139, meaning the District would still have purchased the maximum amount of coverage allowed by § 537.610 and, therefore, would still have waived its sovereign immunity up to that amount. Point VI is denied.

## V. Conclusion

Pursuant to Rules 78.10(c) and 84.14, this Court remits the award to $403,139. In

11. The 2011-12 policy had a $2 million limit of liability for coverage. The 2010-11 policy had a $3 million limit of liability for coverage.

12. To the extent it held otherwise, *Farm Bureau Town & Country Insurance Co. of Missouri v. American Alternative Insurance Corp.*,

347 S.W.3d 525, 533 (Mo. App. 2011), should not be followed.

13. The 2010-11 policy had a retention of $175,000.

all other respects, the circuit court's judgment is affirmed.[14]

Breckenridge, C.J., Stith, Draper, Wilson and Russell, JJ., concur.

Powell, J., not participating.

14. Pursuant to Rule 78.10(c), Newsome has the option of electing for a new trial on damages within 30 days of the date this Court issues its mandate in this case (though, as discussed, he cannot be awarded more than $403,139). If Newsome does not timely elect for a new trial on damages or if he otherwise accepts this Court's remittitur, the circuit court shall promptly amend the judgment to conform to the remitted award. *See id.*