

# SUPREME COURT OF MISSOURI
## en banc

MARY J. MOORE,               )     *Opinion issued September 15, 2020*
)
            Appellant,    )
)
v.                      )     No. SC98169
)
BI-STATE DEVELOPMENT AGENCY  )
d/b/a METRO,           )
)
            Respondent.  )

### APPEAL FROM THE CIRCUIT COURT OF THE CITY OF SAINT LOUIS
The Honorable Christopher E. McGraugh, Judge

Mary J. Moore (hereinafter, "Driver") appeals the circuit court's amended judgment reducing her personal injury award against Bi-State Development Agency d/b/a Metro (hereinafter, "Metro") to comply with the statutory cap set forth for public entities afforded sovereign immunity pursuant to section 537.610, RSMo 2016.[1] Driver asserts section 537.610 conflicts with section 70.429's adopted federal regulations because section 70.429 is a more specific statute enacted after section 537.610. The circuit court's judgment is affirmed.[2]

---

[1] All statutory references are to RSMo 2016.
[2] This Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution because it granted transfer after opinion by the court of appeals.

**Factual and Procedural History**

On April 19, 2013, Driver was driving her regularly scheduled school bus route, picking up children before school. When she arrived at an intersection in the City of Saint Louis, the student who is picked up at that intersection was not waiting for her. Driver parked the school bus and turned on its flashers. The student arrived and boarded the bus. After the student safely boarded the bus, a Metro Call-A-Ride bus collided with Driver's school bus.

Driver was injured and brought this personal injury suit against Metro. Following a jury trial, the jury returned a verdict in Driver's favor, awarding her $1.878 million in damages. Metro filed a motion for remittitur, asserting the award should be reduced pursuant to section 537.610, which sets the liability limitations for public entities. The circuit court sustained Metro's motion and entered an amended judgment, which reduced Driver's damage award to the statutory maximum amount allowed plus interest. Driver appeals.

**Analysis**

Driver contends the circuit court erred in sustaining Metro's motion for remittitur pursuant to section 537.610 and entering an amended judgment reducing her damage award. Driver claims section 537.610 conflicts with section 70.429 because section 70.429 adopted specific federal regulations that control the analysis. Driver believes those federal regulations require Metro to satisfy all judgments of $5 million or less for injuries caused by the negligent operation of its buses with a seating capacity of sixteen

or more people.  Accordingly, Driver asserts sustaining the motion for remittitur was improper and the original judgment against Metro should be reinstated.

*Sovereign Immunity*

In 1949, Missouri and Illinois entered into an agreement to create Metro as an interstate compact entity.  Section 70.370.  Metro "was created to plan, construct, own, operate and maintain bridges, airports and terminals and to coordinate streets, highways, parking areas, water supply, and sewage and disposal works, recreational and conservation facilities and projects."  *Stacy v. Truman Med. Ctr.*, 836 S.W.2d 911, 918 (Mo. banc 1992), *overruled on other grounds by Southers v. City of Farmington*, 263 S.W.3d 603, 614 (Mo. banc 2008).  Metro's purpose is "to provide a unified mass transportation system which, by reducing duplication, would halt or stem the deterioration of mass transportation and enable the unified system to operate at a profit rather than at a loss."  *Bartlett v. Bi-State Dev. Agency*, 827 S.W.2d 267, 269 (Mo. App. E.D. 1992).

The United States Congress approved the interstate compact as required by the United States Constitution's Compact Clause, article I, section 10, clause 3.  Because Metro is an interstate compact entity, created by Missouri and another state, and the United States Congress approved the compact, it is considered a public entity for purposes of sovereign immunity.  Section 537.600.3; *see also State ex rel. Trimble v. Ryan*, 745 S.W.2d 672, 674 (Mo. banc 1988).  Accordingly, Metro retains its sovereign immunity for negligent acts in certain circumstances.  Section 537.600.1.  However, its sovereign immunity is waived when there are injuries "directly resulting from the

3

negligent acts … by public employees arising out of the operation of motor vehicles … within the course of their employment ….” Section 537.600.1(1).

Driver alleges she sustained injuries due to the negligent operation of a Metro bus. Accordingly, Metro’s sovereign immunity is waived for purposes of her claim.

*Section 537.610*

The jury awarded Driver $1.878 million in damages. Following Metro’s motion for remittitur, based upon the statutory damage cap set forth in section 537.610.2, the circuit court reduced Driver’s damages. Driver asserts the circuit court’s judgment is contrary to the mandates of section 70.429 and represents a conscious choice to remove Metro from section 537.610’s limitations.

When sovereign immunity is waived for a public entity, section 537.610.2 places a statutory cap on the amount of damages that may be awarded to an injured party. *Teeter v. Mo. Highway & Transp. Comm’n*, 891 S.W.2d 817, 821 (Mo. banc 1995). Liability in those instances “shall not exceed two million dollars for all claims arising out of a single accident or occurrence and *shall not exceed three hundred thousand dollars for any one person in a single accident or occurrence*, except for those claims governed by the provisions of the Missouri workers’ compensation law, chapter 287.” Section 537.610.2 (emphasis added).[3]

---

[3] The monetary limitation of section 537.610.2 “shall be increased or decreased on an annual basis effective January first of each year in accordance with the Implicit Price Deflator for Personal Consumption Expenditures as published by the Bureau of Economic Analysis of the United States Department of Commerce.” Section 537.610.5.

*Section 70.429*

Section 70.429 provides, "All interstate and intrastate United States Department of Transportation safety rules and regulations shall apply to all operations of the bi-state development transit system." Any bi-state development transit system that fails to comply with the federal safety rules and regulations will be denied state funding. *Id*. Accordingly, Driver asserts section 70.429 requires Metro to comply with all provisions of Title 49, Subtitle B, Chapter B Federal Motor Carrier Safety Regulations.

The Federal Motor Carrier Safety Regulations describe the minimum levels of financial responsibility that must be "maintained by for-hire motor carriers of passengers operating motor vehicles in interstate … commerce." 49 C.F.R. § 387.25. The purpose of the Federal Motor Carrier Safety Regulations "is to create additional incentives [for] carriers to operate their vehicles in a safe manner and to assure that they maintain adequate levels of financial responsibility." *Id*. Every carrier must obtain and maintain minimum levels of financial responsibility. 49 C.F.R. § 387.31. The minimum limit for a "vehicle with a seating capacity of 16 passengers or more, including the driver" is $5 million dollars. 49 C.F.R. § 387.33(a)(1).[4]

*Potential Statutory Conflict*

Driver alleges the circuit court erred in applying section 537.610.2 and reducing her damage award because it conflicts with section 70.429. Driver asserts the section 70.429 mandate to maintain financial insurance minimums requires Metro to pay any

---

[4] Metro maintains a self-insurance policy complying with these minimum levels of financial responsibility.

award up to the amount of the insurance limits. Driver believes the adoption of section 70.429 supersedes the statutory cap on damages set forth in section 537.610.2 because, according to the canons of statutory interpretation, it was enacted later in time and is more specific.

"The primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language." *Bateman v. Rinehart*, 391 S.W.3d 441, 446 (Mo. banc 2013). "When the words are clear, there is nothing to construe beyond applying the plain meaning of the law." *Id*. (quoting *State v. Rowe*, 63 S.W.3d 647, 649 (Mo. banc 2002)). A court applies rules of statutory construction only to resolve an ambiguity when the legislative intent cannot be determined from the plain statutory language. *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharmacy*, 208 S.W.3d 907, 910 (Mo. banc 2006).

Driver's argument fails because it presupposes the statutes are actually in conflict, "which is a precondition to the application of the principles of statutory construction." *State ex rel. City of Jennings v. Riley*, 236 S.W.3d 630, 631 (Mo. banc 2007). Section 537.610's plain language limits the amount of recovery for a single claim. Both section 537.610.1 and section 537.610.2 contain the limiting language that liability "shall not exceed three hundred thousand dollars for any *one person in a single accident or occurrence*." (Emphasis added). Clearly, the legislature waived sovereign immunity for Metro and limited its liability to not exceed a specific amount in a single case.

Section 70.429's plain language adopts the United States Department of Transportation's safety rules and regulations as a prerequisite for any bi-state

6

development transit system to receive state funding. Driver indicates, as a part of the federal safety rules, Metro must maintain a minimum level of financial responsibility. Yet, Metro need only comply with section 70.429 if it seeks state funding.

The mere proposition that Metro must maintain a minimum level of financial responsibility as set forth by federal safety regulations does not conflict with the legislature's per individual, per-occurrence statutory limitation of liability, nor does it implicitly overrule that limitation. In *Newsome v. Kansas City, Missouri School District*, 520 S.W.3d 769, 781 (Mo. banc 2017), the plaintiff argued, because the public entity defendant purchased liability coverage, section 537.610.2's damage liability cap was waived up to the amount of the insurance purchased. Based upon section 537.610's plain language, this Court found the public entity's liability coverage for a single claim could not exceed the statutory maximum cap regardless of whether the public entity purchased liability coverage. *Id.* The public entity's procurement of liability coverage in excess of the statutory cap "could not, by law, waive its sovereign immunity to an amount exceeding the limits of [section] 537.610." *Id.* While section 70.429 was not implicated in *Newsome*, it is clear a public entity may comply with, or exceed, section 70.429's financial responsibility requirement without modifying section 537.610's damage cap. *Newsome,* 520 S.W.3d at 781.

Accordingly, there is no conflict between section 537.610's plain statutory language providing for a damages cap and section 70.439 providing Metro needs to comply with federal safety regulations to receive state funding. "[T]his Court is bound to apply that language as written and may not resort to canons of construction to arrive at a

different result." *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 605 (Mo. banc 2019). Metro's compliance with federal safety rules and regulations to purchase liability coverage in excess of the per-incident damages cap in section 537.610 does not squander its liability protection provided in section 537.610.2. There is no statutory conflict, nor is there a need to resort to canons of statutory construction to resolve Driver's argument section 70.429 should control because it was enacted later in time and is more specific.

**Conclusion**

There is no need to engage in additional statutory construction because the statutes' plain language is clear and there is no statutory conflict. The circuit court's judgment, which reduced Driver's damage award to statutory maximum amount allowed, plus interest, is affirmed.

_____
GEORGE W. DRAPER III, Chief Justice

All concur.

8