

# In the Missouri Court of Appeals
# Eastern District

**DIVISION FOUR**

| | | |
|---|---|---|
| BEVERLY BRENNAN, | ) | No. ED112917 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of City of St. Louis |
| vs. | ) | Cause No. 1622-CC11492 |
| | ) | |
| HARRIS-STOWE | ) | |
| STATE UNIVERSITY, | ) | Honorable Thomas A. McCarthy |
| | ) | |
| Appellant. | | FILED: September 16, 2025 |

**Opinion**

This appeal comes before us after Beverly Brennan (Brennan) won a jury verdict on her claim of hostile work environment based on sex[1] against Harris-Stowe State University (University). Following the verdict and the circuit court's judgment awarding attorney's fees, the University filed a motion for judgment notwithstanding the verdict (JNOV), or in the alternative for a new trial, alleging Brennan failed to present substantial evidence of the essential elements of her hostile work environment claim. The circuit court denied the University's motion, finding Brennan made a submissible case, and noting that although the University

---

[1] While Brennan uses the words "gender" and "sex" interchangeably in her Charge of Discrimination and Petition, this Court readily understands her argument to be that of discrimination on the basis of sex under the MHRA.

presented evidence to rebut Brennan's allegations, the jury was free to disbelieve some or all the evidence presented. We agree. The circuit court's judgment is affirmed.

Additionally, Brennan filed two separate motions requesting this Court: (1) award her attorney's fees and costs on appeal should we deem her the prevailing party; and (2) strike Brennan's deposition testimony submitted as Exhibit 3 of the University's Reply Brief. This Court grants Brennan's request for attorney's fees and costs on appeal as she is the prevailing party as defined in § 213.111.2. [2] We deny Brennan's motion to strike her deposition testimony.

## Background

Prior to this litigation, the University employed Brennan as a full-time faculty member in the College of Arts and Science, where she taught Speech and Theater for two decades. On March 11, 2016, Brennan filed a Charge of Discrimination with the Missouri Human Rights Commission (Commission). In her Charge, Brennan alleged that the University discriminated and retaliated against her in violation of the Missouri Human Rights Act (MHRA), Title VII (of the Civil Rights Act of 1964), and the Age Discrimination Employment Act because of (1) her race, (2) her sex, (3) her age, (4) for reporting unlawful harassment of students, and (5) in retaliation for participating in a coworker's discrimination investigation. Among other allegations, Brennan claimed the University refused to promote her or honor her tenured status because of her race and sex. She further contended there were other non-African American female employees whom she believed the University discriminated against as well. Moreover, in her Charge, Brennan alleged that the discriminatory actions began in January 2010 and that discriminatory conduct was ongoing.

---

[2] All statutory references are to RSMo (2016) unless otherwise indicated. The MHRA has since been amended effective August 28, 2017. However, Brennan filed her Petition prior to these amendments. Thus, we analyze this case using the pre-2017 amended statutory language.

2

The Commission granted Brennan the right to file suit, and on December 8, 2016, Brennan filed a Petition against Defendants University, and two employees: Dr. Lateef Adelani (Dean of the College of Arts and Science), and Dr. Dwayne Smith (Provost and Vice President for Academic Affairs) pursuant to § 213.010. In Brennan's Petition, she pleaded that she was a member of a protected class by stating: "by virtue of her gender as a female, is a member of a class of persons protected by the Missouri Human Rights Act." She also pleaded that she was subject to unwelcome harassment, based on her sex, by experiencing conduct that has the effect of unreasonably interfering with her work performance, and that adversely affected the terms, conditions, and/or privileges of her employment with the University. Brennan also pleaded that the conduct was not limited to the acts described in her Petition. Brennan pleaded her "gender was, at the very least, a contributing factor in Defendants' disparate treatment of her." Further, Brennan pleaded that the Defendants knew or should have known about the discriminatory conduct which she alleged was severe and/or pervasive such that a reasonable person would find her "work environment to be hostile and/or abusive." Finally, Brennan pleaded the University, in effect, condoned, ratified, and/or authorized the gender discrimination and retaliation against her by Dr. Adelani and/or Dr. Smith.

At trial, several people testified, including Brennan, Dr. Adelani, Dr. Smith, and other current and former University faculty members. Gregory Carr, a professor in Brennan's department, testified that the administration's 2014 policy change— regarding requiring prerequisites for his and Brennan's classes— jeopardized their statuses as full-time professors. He testified that the department chair, Mr. Spence, gave them an ultimatum: "either Ms. Brennan is going to have to retire or Mr. Carr would be an adjunct." Brennan testified, that over a dozen times at monthly department meetings, Dr. Adelani would lose his temper at the female

employees. Brennan also testified that in October 2015, Brennan emailed Leslie Holloway, the Director of Communications of the University, regarding issues she had pertaining to male employees restricting her access to the University's theater. In rebuttal to Brennan's evidence, the University adduced evidence that Brennan did not complain of discrimination to her therapist, David Rocco.

At the close of Brennan's evidence, the University orally moved for a directed verdict, claiming (1) that Brennan failed to make a submissible case; (2) that Brennan failed to establish that any adverse employment actions were taken within the actionable statutory period; and (3) that she failed to present evidence of damages. The circuit court reserved its ruling until the close of all evidence. Before the close of all evidence, Brennan abandoned all claims against Dr. Smith, but proceeded on the claims against the University and Dr. Adelani for sex-based hostile work environment and retaliation. At the close of all the evidence, the University moved again for a directed verdict, and the Court denied the University's motions for a directed verdict at the close of Brennan's case and at the close of all the evidence.

Thereafter, the jury returned a verdict: (1) in favor of Brennan on her claim for damages for hostile work environment against the University, and assessed damages in the amount of $750,000.00; and (2) in favor of Dr. Adelani on Brennan's claim for damages for hostile work environment. The jury found in favor of both Defendants on Brennan's claims of retaliation.

The University then moved for JNOV under Rule 72.01(b).[3] The circuit court found that Brennan made a submissible case, and that it was within the purview of the jury to "disbelieve

---

[3] "A party may move for a directed verdict at the close of all the evidence. Whenever such motion is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than thirty days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the motion for a directed verdict; or if a verdict was not returned, such party, within thirty days after the jury has been discharged, may move for judgment in accordance with the motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in

4

some or all" of the evidence presented. As such, the circuit court held, "the evidence at trial was sufficient to support the jury's verdict and judgment notwithstanding the verdict [was] inappropriate." Included in the University's motion for JNOV was a motion for new trial in the alternative. The University argued it was entitled to a new trial due to various alleged trial errors, including allegations of prejudicial instructional errors. The circuit court denied the University's motion, reasoning it did not show the requisite good cause under Rule 78.01 to be granted a new trial. The University appeals.

## Standard of Review

"The standard of review for the denial of a judgment notwithstanding the verdict (JNOV) is essentially the same as review of the denial of a motion for directed verdict." *Li Lin v. Ellis*, 594 S.W.3d 238, 241 (Mo. banc 2020) (internal quotation omitted). The question this Court must determine is "whether [Brennan] presented a submissible case by offering evidence to support every element necessary for liability." *Id.* (internal quotation omitted). When determining whether Brennan presented a submissible case, this Court looks at whether she offered evidence to "support every element necessary for liability." *McKinney v. City of Kansas City*, 576 S.W.3d 194, 198 (Mo. App. W.D. 2019). "Whether [Brennan] made a submissible case is a question of law that this Court reviews *de novo*." *Newsome v. Kansas City, Mo. Sch. Dist.*, 520 S.W.3d 769, 775 (Mo. banc 2017)).

This Court views the evidence "in the light most favorable to the jury's verdict, giving [Brennan] the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict." *McKinney*, at 198. (internal quotation omitted). This Court will only

---

the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial." Rule 72.01(b).

5

reverse for insufficient evidence if there is a complete absence of probative facts to support the jury's determination. *Id.* "A JNOV is a drastic action that can only be granted if reasonable persons cannot differ on the disposition of the case." *Arkansas-Missouri Forest Prods., LLC v. Lerner*, 486 S.W.3d 438, 447 (Mo. App. E.D. 2016).

### Discussion

The University raises six points on appeal. In Point I, the University contends it was entitled to JNOV or, in the alternative, a new trial because Brennan failed to plead the alleged discriminatory conduct—submitted to the jury in Verdict Director No. 8—in either her Charge of Discrimination or her Petition, as necessary to satisfy procedural threshold requirements. In Point II, the University argues it was entitled to a directed verdict and JNOV because the acts alleged did not occur during the statutorily actionable period. Parts of the University's Points III and VI are essentially the same. In Point III, the University argues that it was entitled to a directed verdict and JNOV because Brennan failed to show that the alleged discriminatory acts were subjectively and objectively severe or pervasive as required for a submissible claim of a hostile work environment. Additionally, in Point III, the University argues it was entitled to a directed verdict and JNOV because Brennan failed to adduce evidence that sex was a contributing factor in the discriminatory acts alleged in the verdict director as required for a submissible claim of a hostile work environment. Finally, in Point III, the University argues it was entitled to a directed verdict and JNOV because Brennan failed to adduce evidence that the discriminatory conduct alleged in the verdict director affected a term or condition of her employment as required for a submissible claim of hostile work environment. In Point VI, as in Point III, the University argues that Verdict Director No. 8 improperly instructed the jury to consider alleged discriminatory acts that were not subjectively and objectively severe or pervasive. In Point IV, the University contends it was entitled to JNOV because Brennan

6

brought her claims under a theory of *respondeat superior* and the jury returned inconsistent verdicts against Dr. Adelani and the University. Finally, in Point V, the University argues the circuit court improperly instructed the jury on Brennan's hostile work environment claims against Dr. Adelani, (Verdict Director No.14), and the University, (Verdict Director No. 8), because the language of the two verdict directing instructions differed.

**Preservation of Errors**

As a preliminary matter prior to appellate review, and consistent with Rule 84.13[4], we address the issue of preservation. (We find the University failed to preserve several issues it now seeks to appeal.) *Hays v. Missouri Department of Corrections*, 690 S.W.3d 523, 526 (Mo. App. E.D. 2024). "Appellate courts are merely courts of review for trial errors, and there can be no review of a matter which has not been presented to or expressly decided by the [circuit] court." *Eivins v. Missouri Department of Corrections*, 695 S.W.3d 212, 221 n.11 (Mo. App. W.D. 2024) (quoting *Barkley v. McKeever Enters., Inc.*, 456 S.W.3d 829, 839 (Mo. banc 2015)). An appellate court has discretion to review unpreserved arguments for plain error. Rule 84.13(c); *Lopez v. Cedar Fair, L.P.*, 702 S.W. 3d 114, 128 (Mo. App. W.D. 2024). However, plain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections." *Lopez*, 702 S.W. 3d at 128 (internal quotation and citation omitted). In deciding whether to exercise our discretion to conduct plain error review, we determine whether the circuit court "committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice." *Cooper v. Chrysler Group, LLC*, 361 S.W.3d 60, 64 (Mo. App. E.D. 2011). Under this record, we find no such

---

[4] "Apart from questions of jurisdiction of the [circuit] court over the subject matter, allegations of error not briefed or not properly briefed shall not be considered in any civil appeal and allegations of error not presented to or expressly decided by the [circuit] court shall not be considered in any civil appeal from a jury tried case." Rule 84.13.

error. As such, we decline to exercise plain error review for Points I, IV, V, and VI. We review Points II and III as the University properly preserved them for appellate review.

### I. The University failed to preserve its claim that the acts alleged in Brennan's hostile work environment claim are non-actionable under the MHRA and therefore it is entitled to JNOV or a new trial

First, the University argues Brennan failed to exhaust her administrative remedies with the Commission prior to filing suit in that Brennan did not include in her Charge of Discrimination, the discrete discriminatory acts she later submitted to the jury. Next, the University argues that Brennan's Petition failed to plead any of the ultimate facts submitted to the jury, and, therefore, she failed to satisfy procedural thresholds for a claim of hostile work environment.

The University did not preserve these issues for appellate review because it did not include them in its motion for directed verdict. "[T]o preserve a jury-tried issue for appellate review, a party must include the issue in both a motion for directed verdict at the close of all evidence if the defendant puts on evidence, and in a motion for JNOV." *Williams v. City of Kansas City*, 641 S.W.3d 302, 318 (Mo. App. W.D. 2021); *see also Tharp v. St. Luke's Surgicenter Lee's Summit, LLC,* 587 S.W.3d 647, 654 (Mo. banc 2019). The University's motion for directed verdict failed to raise either claim of error it now seeks to advance in Point I. The University's failure to do so "renders a subsequent motion for [JNOV] without basis and, likewise, preserves nothing for appeal." *Williams*, 641 S.W.3d at 318.

Moreover, the failure to exhaust administrative remedies is an *affirmative* defense upon which the University bears the burden of proof. *Id.* at 319. The University waived this affirmative defense by not pleading it in its Answer pursuant to Rule 55.08. "To properly assert an affirmative defense, [the University] must 'clearly and precisely [assert] additional facts which serve to avoid the [University's] legal responsibility.'" *Williams v. City of Kansas City*,

8

641 S.W.3d 302, 315 (Mo. App. W.D. 2021) (quoting *Ditto, Inc. v. Davids*, 457 S.W.3d 1, 15 (Mo. App. W.D. 2014). Failure to plead specific facts to support the affirmative defense means the affirmative defense was not adequately raised, and the affirmative defense fails as a matter of law. *Id.* For all these reasons, Point I is denied.

## II.     The University is not entitled to a directed verdict or JNOV because Brennan provided evidence of discrimination that was not time-barred

The University claims the circuit court erred in denying its motions for directed verdict and JNOV because the discrete acts alleged in Brennan's verdict director were time-barred. The University contends that the acts pleaded by Brennan occurred prior to December 2014, which is more than 180 days before Brennan filed the Charge of Discrimination and more than two years before she filed the Petition.

Any lawsuit under the MHRA must be brought "no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party." § 213.111 RSMo. Under the MHRA, an employee must also file a charge of discrimination with the Commission within 180 days of any alleged discriminatory act. § 213.075.1 ("Any person claiming to be aggrieved by an unlawful discriminatory practice may make, sign and file with the commission a verified complaint in writing, within one hundred eighty (180) days of the alleged act of discrimination.").

Brennan filed her Charge of Discrimination on March 11, 2016. To be timely, therefore, Brennan's claims must be based on discrimination that occurred on or after September 13, 2015. However, "[t]he filing requirements are subject to the continuing violation exception, which permits [Brennan] to recover for acts of discrimination occurring prior to the 180-day filing period if the discrimination is a series of interrelated events." *Wallingsford v. City of Maplewood*, 287 S.W.3d 682, 685 (Mo. banc 2009); *see also Plengemeier v. Thermadyne Indus.*,

9

*Inc.*, 409 S.W.3d 395, 401 (Mo. App. E.D. 2013) ("[U]nder the continuing violation theory, a plaintiff may pursue a claim for an event that occurred prior to the statute of limitations for filing a claim of discrimination if the plaintiff can demonstrate that the event is 'part of an ongoing practice or pattern of discrimination' by the employer."). The record on appeal demonstrates that Brennan adduced evidence of discriminatory acts within the 180-day window as well as a pattern of discrimination sufficient to satisfy the continuing violation theory.

In the instant case, Brennan alleged that from 2010 to 2017, she was discriminated against because of her sex. The evidence adduced at trial included testimony that administrative changes in student registration jeopardized Brennan's and one of her colleague's full-time employment. In addition, there was evidence that Dr. Adelani directed aggression at female employees including Brennan herself.

Moreover, Brennan testified to instances of discrimination that occurred after September 13, 2015. In October 2015, Brennan emailed Leslie Holloway, the Director of Communications of the University, regarding issues she had pertaining to male employees restricting her access to the University's theater. Brennan also testified that a $10,000 budget that had long been allocated between the music, theater, and arts departments—the theater and music departments led by Brennan and another female faculty member —was reallocated by Dr. Adelani in its entirety to the fine arts department managed by a male professor. Furthermore, Brennan testified that the University never restored that funding to the other two departments prior to her retirement in 2017. In November 2015, attempting to get the budget restored, Brennan emailed Brian Higgins, the head of the financial department, as well and attempted to have conversations with Dr. Adelani, who was dismissive. Having adduced evidence of continuous discriminatory

10

conduct both before and after September 13, 2015, Brennan's claims fall within the actionable statutory period. For all these reasons, Point II is denied.

### III. The University is not entitled to a directed verdict or JNOV because Brennan presented sufficient evidence to support every element of her hostile work environment claim

In Point III, the University includes three different reasons as to why the circuit court erred in denying its motion for directed verdict and JNOV, in that Brennan failed to establish that each of the discrete acts alleged in the verdict director: (1) was sufficiently severe, or pervasive, (2) affected a term, condition, or privilege of employment, and (3) that Brennan's sex was a contributing factor. We now turn to the three elements of a hostile work environment claim that the University alleges were not sufficiently established to make a submissible case.

#### a. Severe or pervasive

A successful claim of a hostile work environment requires [Brennan] to show: (1) she is a member of a group protected under the MHRA; (2) she was subjected to unwelcome harassment; (3) [Brennan]'s membership in the protected group was a contributing[5] factor in the harassment; and (4) a term, condition, or privilege of [Brennan]'s employment was affected by the harassment.

*McGaughy v. Laclede Gas Company*, 604 S.W.3d 730, 748 (Mo. App. E.D. 2020) (internal citation omitted).

"[H]arassing conduct must be sufficiently severe or pervasive both as viewed subjectively by the plaintiff and as viewed objectively by a reasonable person." *Fuchs v. Dep't of Revenue*, 447 S.W.3d 727, 734 (Mo. App. W.D. 2014). "Whether a reasonable person would objectively consider [an employer's] behavior towards [a claimant] severe enough to alter the

---

[5] Effective August 28, 2017, the MHRA was amended to change the "contributing factor" standard to a "motivating factor" standard. *Jordan v. Bi-State Dev. Agency*, 561 S.W.3d 57, 59 n.1 (Mo. App. E.D. 2018). Because the harassment underlying Brennan's claim occurred prior to the 2017 amendments, the "contributing factor" standard continues to apply here. *See McGaughy*, 604 S.W.3d at 745.

conditions of her employment and create an abusive working environment is a question of fact."[6] *Id.* (internal quotations omitted).

Here, the circuit court found that Brennan provided evidence of improper conduct and subjective offense. *See Fuchs*, 447 S.W.3d at 734. Furthermore, the jury heard the evidence and determined that the University's conduct was sufficiently severe and pervasive to create a hostile work environment. At trial, Brennan testified that the University cut the budget for her department and gave it to the sole male professor. She also testified that the budget cuts prevented her from carrying out her job with the same level of professionalism she had in the past. She also testified that despite being the Director of Speech and Theater, she was restricted from using the theater when male employees were not.

To rebut Brennan's evidence, the University proved that Brennan did not complain of discrimination to her therapist, David Rocco. Brennan told her therapist she "didn't have any negative feelings towards Harris-Stowe." Further, the University provided evidence that it offered her a promotion to an academic chair position, which she declined. Brennan explained that she declined because she had already decided to retire. As noted, "[o]nce there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury." *Id.* (quoting *Cooper*, 204 S.W.3d at 245. Here, the jury determined that the conduct was sufficiently severe or pervasive and disregarded evidence to the contrary.

**b. Affecting a Term or Condition of Employment**

---

[6] At oral argument, the University argued that the circuit court erred in leaving this determination for the jury because whether harassment is severe or pervasive is a question of law, not a question of fact. This Court disagrees. "Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury." *Fuchs*, 447 S.W.3d at 734 (quoting *Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238 (Mo. App. E.D. 2006)).

"A plaintiff need only show that harassment affected a term, condition, or privilege of employment by *either* causing a tangible employment action or an abusive working environment." *Clark v. AT&T Mobility Services, L.L.C.*, 623 S.W.3d 197, 205 (Mo. App. W.D. 2021). We find Brennan produced sufficient evidence to allow the jury to make this finding either as an abusive work environment as detailed above or as direct and tangible employment action as we detail here. Brennan testified that the class prerequisite requirement forced Brennan to have to offer weekend classes, and her department's budgetary reductions eliminated stipends she received for directing plays. Both Brennan and Carr testified that after the prerequisites were added to their classes, the University gave them an ultimatum that either Brennan would have to retire or Carr would be demoted.

### c. Sex as a contributing factor

In addition to the evidence about budgets being reallocated to a male-led department head and male employees restricting Brennan's use of the University's theater, there was additional evidence from which the jury could have found that sex was a contributing factor in the discriminatory conduct. Brennan testified that the University President, Dr. Warmack, hired new administrators and all were male. She explained to the jury that "it seemed like [the men] were all very supportive of each other, covering up for each other, and I didn't have any qualifications to be a [K]appa or to be in that club at work … they were all men." In relation to hiring policies and decisions, Brennan testified she believed the appointments to chair positions were made based on gender.

With respect to Dr. Adelani, Brennan testified that his abusive treatment toward her was discriminatory because it was on the basis of her sex. When she approached Dr. Adelani about the budget, he "just snap[ped] and [put] his hand towards my face and sa[id], no, no, no, no, no,

13

you will not instruct me. No, I will not hear this. No, you cannot tell me what to do." In another instance, Brennan stated that, "sometimes it would be a new idea or a suggestion by a woman … and if it wouldn't be the way Adelani was saying it was going to be, he tended to get very upset." Brennan testified she never saw Dr. Adelani engage in this type of behavior toward the men at all. Moreover, during a planning meeting, attended by both men and women, for a University reception, Dr. Adelani assigned to the women only the roles of getting decorations, punch, cookies, flowers, and balloons.

Brennan told the jury that during another meeting she witnessed Dr. Adelani lose his temper with a female English teacher who opposed Dr. Adelani's idea. He "got very angry and threw down a piece of chalk on the floor, which broke" and this was not the first time she witnessed him behave this way though she never saw Dr. Adelani argue with or challenge a male employee.

The University provides no reason the jury could not consider this evidence which supports the jury's determination that Brennan's sex was a contributing factor to her discrimination. "The standard for reversal requires not that there is no other alternative meaning of the evidence but that there is a complete absence of probative facts to support the jury's finding." *Darks v. Jackson Cnty.*, 601 S.W.3d 247, 259 (Mo. App. W.D. 2020). A review of the record demonstrates that there is ample evidence to support the jury's finding. For these reasons, Point III is denied.

## *IV.* The University failed to preserve its claim that the purported inconsistent verdicts between it and Dr. Adelani entitle it to JNOV

The University argues that because Brennan brought her claims under a theory of *respondeat superior* and the jury absolved Dr. Adelani of liability, the circuit court should have also absolved the University. But "[t]o preserve for appellate review a claim that the jury's

14

verdict was inconsistent, the party must object before the jury is discharged." *China Worldbest Grp. Co. v. Empire Bank*, 373 S.W.3d 9, 13 (Mo. App. S.D. 2012). The "proper method of seeking relief [is] to request the trial court to return the jury for further deliberation." *Id.* (internal quotation omitted). Failing to object waives the claim of error. *Id.* Here, the University did not request that the jury return to deliberate further. Point waived.

Even if we were to reach the merits of this point, the University's argument is dubious. The jury could reasonably infer under all the circumstances that the conduct of other University employees, either independent of Dr. Adelani's conduct or in conjunction with it, was sufficient to hold the University liable, even though the jury believed the conduct of Dr. Adelani was insufficient to establish his independent liability. *Harrison v. Harris-Stowe State University*, 626 S.W.3d 843, 854-857 (Mo. App. E.D. 2021).

## V.     The University failed to preserve its claim that the jury was improperly instructed on Brennan's hostile work environment claims against Dr. Adelani and the University

The University claims the circuit court erred in instructing the jury on Brennan's hostile work environment claims because the language in Instruction No. 8 (against the University) and Instruction No. 14 (against Dr. Adelani) was different. The University argues that the language in Instruction No. 8 imposed a higher burden on the University than Instruction No. 14 imposed on Dr. Adelani, and that was improper, confusing, and misleading.

Pursuant to Rule 70.03,

[c]ounsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto on the record during the instructions conference, stating distinctly the matter objected to and the grounds of the objection. The objections must also be raised in the motion for new trial in accordance with Rule 78.07.

"Timely objections [to an instruction] are required as a condition precedent to appellate review in order to afford the [circuit] court an opportunity to correct any mistakes immediately

15

and inexpensively without risking the delay and expense of an appeal and a retrial." *Ross-Paige v. Saint Louis Metro. Police Dep't*, 492 S.W.3d 164, 170 (Mo. banc 2016) (internal quotation omitted).

During the instruction conference, the only objection the University made to Instruction No. 8 was this—"[i]t's the defense's position that there need not be a laundry list, but simply a statement that first, Plaintiff was subjected to unwelcome conduct that was sufficiently severe or pervasive such that either; and then, proceeding thereafter with the second and third contention." The circuit court overruled the University's objection and submitted Instruction No. 8 to the jury.

Critically, it was not until its motion for new trial that the University raised its objection to Instructions No. 8 and 14 on the basis raised here. Despite objecting to a "laundry list" in Instruction No. 8, the University made no specific objection to the wording of Instructions Nos. 8 and 14 being distinct from one another. As such, the University failed to preserve this issue for appeal. For this reason, Point V is denied.

## VI. The University's claim that Verdict Director No. 8 improperly instructed the jury to consider alleged discriminatory acts that were not subjectively and objectively severe or pervasive is not preserved[7]

The University's Point VI merely repackages its third point on appeal as a claim of instructional error. It claims the circuit court erred in instructing the jury on Instruction No. 8 because the acts alleged were not independently capable of forming a hostile work environment because they were not sufficiently severe or pervasive.

In addition to the objection previously mentioned in Point V, the University objected to Instruction No. 8, stating, "[t]he instruction is not supported by the evidence, and is not supported by the law." The circuit court overruled the University's objection and submitted

---

[7] During oral argument, the University specifically requested this Court review Point VI *ex gratia*. For the reasons discussed in the Preservation of Error section of this Opinion, this Court declines to review Point VI *ex gratia*.

Instruction No. 8 to the jury. The University made no specific objection regarding the severe or pervasive standard as is required for preservation purposes pursuant to Rule 70.03. As such, the University failed to preserve this issue for appeal. For this reason, Point VI is denied.

## VII. Motion for Attorney's Fees

Brennan requests this Court award her attorney's fees and costs on appeal should the Court deem her the prevailing party on appeal and to permit her to provide supplemental documentation in support of this motion when the work on appeal is complete. "Section 213.111.2 authorizes the court to award court costs and reasonable attorney's fees to a prevailing party. A prevailing party includes one who prevails in an action brought under the MHRA, receives an award of attorney's fees from the trial court, and successfully defends that favorable judgment on appeal." *Harrison,* 626 S.W.3d at 863.

This Court affirms Brennan's claim for hostile work environment against the University under the MHRA. Brennan also recovered her attorney's fees and costs before the circuit court. Having succeeded, Brennan is a prevailing party as defined in Section 213.111.2, RSMo (Cum. Supp. 2018). *See Id.*

Accordingly, this Court grants Brennan's request for reasonable attorney's fees on appeal. "Because the circuit court is better equipped to hear evidence and argument on this issue and to evaluate the reasonableness of the requested fees, we remand to the [circuit] court to determine and enter an appropriate award." *Id.*

## VII. Motion to Strike

Brennan requests this Court strike the University's Exhibit titled "Deposition of B. Brennan as Designated by the Parties and Played at Trial" because Brennan's deposition was not admitted at trial and, therefore, may not be used to support a point on appeal relating to the

sufficiency of the evidence. Brennan further argues the exhibit should be stricken because the deposition was not played at trial.[8]

However, Brennan makes this claim while relying on her deposition in her own brief. Brennan cited to her deposition when she claimed the University could not show prejudice from unfair surprise as to her allegations of discrimination because she testified to Dr. Adelani's yelling outbursts in her deposition taken in November 2019 more than four years before trial. Again, Brennan claimed she testified about her restricted access to the theater and budget reallocation during her deposition. Brennan cannot prevent the University from relying on her deposition while she relies on it herself. While generally, "[a] deposition not offered in evidence in the [circuit] court cannot be considered on appeal," *Wood v. Procter & Gamble Mfg. Co.*, 787 S.W.2d 816, 818 (Mo. App. E.D. 1990), "[w]hat [is] good for the goose is good for the gander." *See generally Saint Luke's Hosp. of Kansas City v. Benefit Mgmt. Consultants, Inc.*, 626 S.W.3d 731, 751 n.16 (Mo. App. W.D. 2021).[9] Brennan's motion to strike is denied.

## Conclusion

The judgment of the circuit court is affirmed.

_Rebeca Navarro-McKelvey_

Rebeca Navarro-McKelvey, P.J.

Gary M. Gaertner, Jr., J and
James M. Dowd, J., concur.

---

[8] The University admits the exhibit was incorrectly and mistakenly denominated as having been played at trial when in fact it was not.

[9] In *St. Luke's*, St. Luke's Hospital asserted a claim against Benefit Management Consultants for penalties under the Missouri Prompt Payment Act (MPPA). However, the Court found that neither party complied with certain MPPA provisions, stating, "neither can Defendants take advantage of penalty provisions where they have ignored those provisions of the MPPA that they did not like." As such, the Court reasoned "[w]hat's good for the goose is good for the gander." The same principle applies here.

18